Reed, J.,
delivered the opinion of the court.
It is contended that the court erred; that the plaintiff in error had no property in the road; that such road was under the absolute control of the public, — was a public highway, and as such was not taxable. It is said: “ The road is constructed across the public lands of the United States, and the right of way therefor is granted by congress to the public.” Again: “ The title to the ground occupied by said roadbed is in the United States ; the right to use it is in the traveling public. Thfe only right the company has is to collect tolls at rates prescribed by the county commissioners, sufficient, presumably, to compensate for the first outlay and for repairing the road.” This theory seems to be predicated upon a very pardonable misconception of the law giving the right of way. Section 2477, Rev. St. U..S., is: “ The right of way for the construction of highwaj's over public lands not reserved to public uses is hereby granted.” By section 2339, “ the right of way for the construction of ditches and canals for the purposes herein specified [mining, agricultural, manufacturing, and other purposes] is acknowledged and confirmed.” Section 2340: “ All patents granted, or preemption or homesteads allowed, shall be subject to any vested and accrued water rights,” etc. The language used in regard to the right of way for highways is “ Is hereby granted.” The word “ grant,” in such connection, is very significant; in fact, seems to be a key for the solution of the question in-. *77 volved. “ Grant: ” “ An act evidenced by letters patent under the great seal, granting something from the king to a subject.” Cruise, Dig., tit. 33, 34. “ A transfer by deed of that which cannot be passed by livery.” Willes, Rep. 147, 149. “ A generic term, applicable to all transfers of real property.” 3 Wash. Real Prop. 181, 353. “A technical term, made use of in deeds of conveyance of lands to import a transfer.” Id. 378, 380. “Public grant is the mode and act of creating a title in an individual to lands which had previously belonged to the government.” See Wash. Real Prop. 181, 208; 2 Kent, Comm. 450, 494; Johnson v. M’Intosh, 8 Wheat. 543; Martin v. Waddell, 16 Pet. 367. It is stipulated that in the year 1876 the grant was accepted, the road constructed, and has since been maintained. This grant and the acceptance were all that was necessary to pass the government title to the right of way, and vest it in the grantee permanently, subject to defeasance in case of abandonment. See Flint etc. R. Co. v. Gordon, 41 Mich. 420. After entry and appropriation of the right of way granted, and the proper designation of it, the way so appropriated ceased to be a portion of the public domain, was withdrawn from it; and the lands through which it passed were disposed of subject to the right of the road company, such right being reserved in the grant. The road company, as shown, became the owner of the right of way. By the use of its money it improved this right of way, making a highway over which the public could pass by the payment of tolls. Although the public became entitled to use the road, such right was only by compliance with the fixed regulations recognizing the ownership. The statutes also provide remedies for any interference, and it is clear that the road company could maintain trespass or other actions for any unwarranted interference with its possession and rights. The fact that the public could pass over the road at pleasure does not detract from the position here taken as long as such right was dependent upon the payment of tolls, which was a constant recognition of ownership and property. It is also clear that the company had such title as *78 could be sold and transferred, and the successor invested with the right of possession. “ Property ” is defined to be “ the right and interest which a man has in lands and chattels to the exclusion of others.” Bouv. Law Dict. “ Applied to lands, comprehends every species of title, inchoate or incomplete. Embraces rights which lie in contract, those which are executory as well as those which are executed.” Am. Law. Dict.; Soulard v. U. S., 4 Pet. *512; Delassus v. U. S., 9 Pet. 133; Smith v. U. S., 10 Pet. 329. Tested by these well-settled principles, it will readily be seen that the contention of plaintiff that it had no tangible, taxable property in the road cannot be sustained. It had its granted right of way, together with its road, for the use of which it exacted dues. A toll road is very analogous to a railway to which congress grants the right of way over the public domain. The right of the state to tax a railway, including roadbed, track, and all betterments upon its right of way, has never been seriously questioned. It is true, a railway is not technically a public highway, but the analogy between it and a toll road, for the purposes of taxation, is so marked that they should evidently be regarded alike. See Railway Co. v. Gordon, 41 Mich. 429; Rogers v. Burlington, 3 Wall. 664; Railroad Co. v. County of Otoe, 16 Wall. 667. The fact that the county commissioners had supervisory control to regulate tolls can have no bearing whatever. It in no way interferes with the ownership or control; only fixes the price the public shall pay for the use of the property. The right to so regulate by virtue of the police power of the state, to prevent extortion, whether by toll roads or railways, is so well settled that discussion is unnecessary; it neither divests, defines, nor modifies ownership. Section 2847, Gen. St.: “ The property of corporations and companies constructing canals, ditches, flumes, plank roads, gravel roads, turnpike roads, and similar improvements, shall be assessed to the company or corporation in the respective counties in which said improvement is situated.” This, if necessary, might almost be regarded as an authoritative declaration by the legislature *79 of ownership and property in constructions of this kind, and of the duty of officials to assess and collect taxes. Bjr sections 8-6 (both inclusive) of article 10 of the state constitution, all property not therein exempted is subject to taxation, and by section 2814, Gen. St., it is declared: “ All property, both real and personal, within the state, not expressly exempt by law, shall be subject to taxation,” etc. We conclude that the plaintiff was the owner of the property subject to the appraisement and taxation, and, not having been by law exempted, the judgment must be affirmed.

Affirmed.