## IDA R. ALDRIDGE, *et al* v. THE BOARD OF EDUCATION OF THE CITY OF STILLWATER.

(Filed September 4, 1905.)

1. **EMINENT DOMAIN, RIGHTS UNDER— Ejectment—School Board May Condemn Land For School-House Site—Measure of Damages Buildings Not Considered, When.** Where a school district takes possession of real estate for the purpose of erecting a school building thereon, and carries out such purpose by completing such building and occupying it for a public school, although the original entry and continued occupancy was wrongful and unlawful, in the proceeding by the school board to condemn under a law enacted after the building had been erected, the owners are only entitled to be awarded the value of the land, and the value of the improvements made by the school board should not be taken into consideration, as they, in such circumstances, are not a part of the realestate; and, where, prior to the commencement of the condemnation proceedings under which the land was finally taken, the owners of the land recover a judgment against the school district for the possession of the land in an ejectment action, such judgment is not res judicata as to the improvements in an action to condemn the land for school purposes, the action to condemn having been begun before the possession was taken under the writ of ouster issued in the ejectment case.

2. **SAME—Injunction.** Where a school board having the right to take land for school purposes under the laws of eminent domain are in possession of land which they unlawfully took and occupied, and erected a school building thereon, and for the possession of which judgment was rendered against them and in favor of the owners of the land, in an ejectment suit, the district court may enjoin the service of a writ of ouster in such case, after the commencement and during the pendency of proceedings to condemn such land for a school house site, such order appearing to be necessary for the protection of the building and in furtherance of justice.

3. **APPEALS—Briefs.** It is the duty of an appellee, as well as the duty of an appellant to brief his case when brought here on appeal and, where he fails to do so and no reasonable excuse appears for such failure, this court, in its discretion, has the right to either consider the case on its merits or to deem error as being confessed and reverse the case or dismiss the cause which he represents, without examining the case-made or transcript.

(Syllabus by the Court.)

*Error from the District Court of Payne County; before Jno. H. Burford, Trial Judge.*     .

*George P. Uhl,* for plaintiff in error.

*Rob't. A. Lowry,* for defendant in error.

Opinion of the court by

BURWELL, J.:   Milo H. Aldridge was the owner of certain lots in the City of Stillwater, Payne County, and the school board of that city erected a school building on these and other lots, and proceeded to condemn them.   After the condemnation proceedings were completed, Aldridge commenced an action in ejectment against the district for possession of the lots, and judgment was rendered in his favor.   On appeal it was affirmed by this court; and in the opinion of this court (10 Okla. 694) the condemnation proceedings were held void, because no notice was given.   The school district again attempted to condemn the land, after having given notice thereof in a newspaper for four successive weeks, and by registering to the postoffice address of the appellants in the case (they being the lawful heirs of Milo H. Aldridge, he having died prior thereto) a copy of such notice.   The school board then sought to enjoin the execution of the writ of ouster issued in the ejectment case, but a demurrer was sustained to the petition, and, on review, that judgment was also affirmed, (13 Okla. 205) the court holding that the law for condemning a school site was void because it failed to provide for the giving of notice, and none was implied.   Meanwhile the legislature enacted article 1, of chapter 31, of the session laws of Oklahoma for 1903, which provides for notice to the land owners, and is free from the defects which rendered the former statute void.   The district

again commenced to condemn the lots in question, and that proceeding was pending when an *alias* writ of ouster was issued in the ejectment case. The school district then began another action to enjoin the execution of the writ by the sheriff, and the district court granted a temporary injunction. The condemnation matter reached the district court on appeal, and the injunction case was consolidated with it and they were tried together. The injunction was made perpetual, and the court held that the appellants were entitled to the value of the lots, but could recover nothing for that part of the school building which was located thereon, and the real contention in this case is as to whether the improvements placed on the lots by school board should have been considered by the jury and the value thereof awarded to appellants.

The law of eminent domain has been frequently discussed by our ablest jurists and its necessity universally conceded; but in the erection of public buildings, the making of public improvements and the building of public highways, such as railroads and canals, the exigencies of the occasion sometimes make it extremely advantageous to enter upon the property needed without delay; still, no matter how great the necessity, the appropriation of the property of the individual for a public use without first condemning and paying for it, is unlawful; and as law is simply a rule of conduct, it should keep pace with the changing conditions of the times; that is, the old principle should be applied to the new conditions, so that there may be an equitable adjustment of every controversy; and those charged with the administration of the law in judicial offices, in cases of this kind, should as far as possible, adopt such rules as will prevent the owner or the land from suffering by reason of the wrongful acts of

those seeking to appropriate it. But, in guarding the rights of the citizens, we should not overlook the claims of the public or of the corporation, nor should they be compelled to do more than to make recompense for the wrong committed.

It has been held that where a municipality or any of its departments, or a corporation, wrongfully takes possession of land without first pursuing the statutory requirements relating to eminent domain and, while in such possession, erects valuable improvements thereon, such as buildings, the owner of the land, in a subsequent action to condemn, is entitled to the value of such improvements under the theory that they are attached to the soil, and are therefore a part of the real estate, (*Graham v. The Connersville & New Castle Railroad Co.* 36 Ind. 463,) but that is not the general rule. In fact, the great weight of authority is to the other effect; that the owner can only recover for the land, and that he cannot recover for the improvements placed thereon during such occupancy. (15 Cyc. 763; *Searl v. School District No. 2 in Lake County*, 133 U. S. 553; *Jones v. New Orleans & Salina, R. R. Co.*, 70 Ala. 227: *Newgrass v. St. Louis, A. & T. Ry. Co.* [Ark.] 15 S. W. 188. *San Francisco & N. P. R. R. Co. v. Taylor* [Cal.] 24 Pac. 1027; . *Jacksonville T. & K. W. R. R. Co. v. Adams* [Fla.] 10 So. 465; *Morgan's Appeal v. Chicago and Northeastern Ry. Co.* 39 Mich. 675; *Toledo, Ann Arbor & Grand Trunk R. R. Co. v. Dunlap, et al.*, [Mich.] 11 N. W., 271; *Greve v. First Div. St. Paul, etc.* [Minn.], 1 N. W. 816; *The Chicago & Alton R. R. Co. v. Hiram Goodwin, et al*, 111 Ill. 273; *Louisville, New Orleans & Texas R. R. Co. v. Dickson*, [Miss.] 56. Am. Dec. 809; *Justice, et al v. Nesquehoning Valley Railroad Co.* 87 Pa. St. 28; *Oregon Railway & Nav. Co. v. Mosier, et al* [Ore.]

13 Pac. 300; *Seattle & M. Ry. Co. v. Corbett* [Wash.], 60 Pac. 127; *International Bridge & Traction Co. v. McLaine* [Tex.], 28 S. W. 454; *Lyon, et al v. Green Bay & Minnesota Ry. Co.* 42 Wis., 538.)

This rule is supported by reason as well as authority. The legislature having granted the right to take the land for a public or quasi-public use, upon making just compensation, all that the citizen can ask is fair and reasonable payment for the damages which he may sustain, considering the land to be in the condition in which it was found at the time of the wrongful entry. In the event that an action is commenced after an unlawful entry, and the land has increased in value, the owner should be awarded the value of the land at the time it is condemned. This rule was applied in the case before us; and if the appellants recover this advanced price for their land and also for the value of the use thereof during its wrongful occupancy (which of course could only be done in an action for that purpose), they will have no just ground for serious complaint. They cannot recover for the building, which cost the school district thousands of dollars. It was not erected for the betterment of the real estate, but for a public use. The common law rule that a building erected on land by a trespasser becomes a part of the real estate, has been modified; that is, an exception has been added to the rule, and this case falls within such exception. The reasons for the exception and its application are manifold, and outside of the Indiana case cited we have found no division of the authorities. It is insisted, however by the appellants, that there was no law at the time the district erected the building upon the lots in controversy under which condemnation for a school site could be had, and there-

fore they are not in the same position as where a wrongful appropriation is made, and subsequently the land taken under the law existing at the time of the entry.   With this we cannot agree.   The legislature had declared the power to condemn for such purpose, but the law failed because it nowhere provided for legal notice.   Even if there were no law on the subject at the time the building was erected, the subsequent law gave the right to take the land, and, the taking being for a public purpose, they will receive just compensation when paid for all their damages, not including the value of the building. They contributed nothing to the erection of it and suffered no loss for its continued use by the public.   (*Mary Greve and Herman Greve v. the First Division of the St. Paul & Pacific R. R. Co., supra.*)

But, did the judgment in the ejectment suit adjudicate the ownership of the building to be in the appellants?  Although the occupancy by the district was wrongful, still, when it finally condemned the land (and the right to do so under the law statute is not questioned) the issue in that proceeding should have been the same as though the ejectment suit had never been commenced.   In a case of this kind an ejectment action would only settle the right to possession and, if prayed for, the damages sustained by the unlawful occupancy of the land, the district not having alleged any interest in the land except as heretofore stated; and, notwithstanding the decision of this court affirming the judgment in the ejectment suit, and the general rule that a district court has not the power or authority to enjoin a judgment of the supreme court of the territory, the injunction was properly issued in this case, because the commencement of the action to condemn presented a new condition which

had not been considered by the appellate court, and was in furtherance of equity and justice. This identical question was considered by the supreme court of Florida in the case of *Jacksonville, T. & K. W. Ry. Co. v. Adams*, 10 S. W. 465, in a very able opinion prepared by Mr. Chief Justice Raney, who reviews the authorities. We quote from the syllabus of the case:

"Where a railroad company, having the power of eminent domain, has entered upon land without the consent of the owner, and without a certain material requirement of the law regulating the exercise of such power having been complied with, and there has been a judgment in ejectment in favor of the land owner against such company or its legal successor, a lessee for 90 years, and the judgment is affirmed on appeal, the appellate court may, no conduct in bad faith upon the part of the company appearing, withhold its mandate of possession to allow a reasonable time for the institution and consummation of new condemnation proceedings. If the new condemnation proceedings are resisted by the land owner, and are dismissed by the trial court, on the ground that there is no constitutional law authorizing the same, and this order is appealed from by the company, the appellate court may withhold its mandate for possession until the decision of such appeal."

This is the first case in which the questions involved have been presented to this court, and there has been no brief filed by the appellee, and the entire burden of finding authorities bearing upon the points raised by the appellants has been placed upon the court. It may be that the appellee felt secure in the position it occupies but, whether it did or not, it should have followed the case here, found the decisions bearing upon the issues and cited them to the court. Cases may arise wherein appellee, by reason of his poverty, will be un-

able to have his case briefed, and, in such circumstances, justice should not fail simply on account of his unfortunate condition; but where the court has every reason to believe that an appellee is able to brief his case, and without good cause fails to do so, in the future he need not be surprised or disappointd to find his case reversed or cause dismissed, as the case may be. In some appellate courts, where an appellee fails to brief his case, error is deemed to be confessed, and the case is reversed without an examination of the record. We have not deemed it expedient to adopt such a rule to be followed in every such case, but we reserve the right to make such order whenever the court has reason to believe that such failure is not due to some unavoidable circumstance or condition.

The judgment is hereby affirmed, at the cost of appellants.

Burford, C. J., who presided in the court below, not sitting; all of the other Justices concurring.