A., T. & S. F. Ry. Co. v. Richter, 20 N. M. 278.

[No. 1667, January 12, 1915.]
# ATCHISON, TOPEKA & SANTA FE RAILWAY CO. v. RICHTER.
[On Rehearing, March 10, 1915.]

## SYLLABUS BY THE COURT.

1. An entryman of coal lands of the United States who has filed a declaratory statement in the United States Land Office, under the provisions of sections 2347-2349, R. S. U. S. (sections 4659-4661), has a possessory right to the land of such a character as to render unlawful an entry thereon by a railroad corporation for railroad purposes, previous to condemnation proceedings.

P. 283

2. The railroad improvements put upon the lands included within a coal entry, previous to condemnation proceedings, even when the entry upon the land is a willful and violent trespass, do not become a fixture to the land, and are not to be taken into consideration, in subsequent condemnation proceedings, in estimating the compensation to be awarded the owner.

P. 293

Appeal from District Court, Bernalillo County; H. F. Raynolds, Judge.

Condemnation proceedings by the Atchison, Topeka & Santa Fé Railway Company against Johanna Richter. From a judgment for Richter, the railway company appeals. Reversed and remanded for new trial.

R. E Twitchell of Santa Fe, E. W. Dobson of Albuquerque and Sam Bushman of Gallup, for appellant.

.The owner of land which has been entered upon by a public service corporation and subsequently condemned is not entitled to compensation in the condemnation proceedings for ties, culverts, rails, etc.

Cohen v. St. L., Ft. S. & W. R. Co., 34 Kan. 158; Lewis on Eminent Domain, 676; Daniels v. C. I. & N. R. Co., 41 Iowa, 52; Lyon v. Green Bay M. R. Co., 43 Wis. 538; Oregon R. & Nav. Co. v. Mosier, 14 Or. 519; Western North Carolina R. C. v. Deal, 90 N. C. 110; Diestrich v. Murdock, 42 Mo. 279; Indiana B. & W. Co. v. Allen, 100 Ind. 409; Jones v. New Orleans & S. R. Co., 70 Ala. 227; Greve v. First Div. of St. Paul & P. R. Co., 26 Minn. 66; Justice v. Nesquehonning Valley R. Co., 97 Pa. St. 28; Jacksonville T. & K. W. R. Co. v. Adams, 27 Fla. 443, 14 L. R. A. 533; Preston v. Sabine & E. T. R. Co., 70 Tex. 375; Flint & Pierce Marquette R. Co. v. Gordon, 2 N. W. 648; Lewis Eminent Domain, page 670, paragraph 507; Jones v. New Orleans, etc. Co., 70 Ala. 227; Louisville, etc. R. Co. v. Jackson, 63 Miss. 380, 56 Am. Rep. 809; Matter of Norwood, etc. R. Co., 47 Hunn 489, 14 N. Y. St. Rep. 437; Oregon R. & Nav. Co. v. Mosier, 14 Oreg. 519; 58 Am. 321; Preslin v. Sabine, etc. R. Co., 70 Tex. 375, 7 S. W. 825; Davidson v. R. R. Co., 3 Texas Civ. App. 473; Denver, etc. Co. v. Stancliff, 4 Utah, 117, 7 Pac. 530; Cohen v. St. Louis, etc. R. Co., 34 Kan. 158, 8 Pac. 138; California, etc. R. Co. v. Southern Pac. R. Co., 65 Calif. 293; Green v. R. R. Co., 26 Minn. 66; Consolidated Turnpike Co. v. N. & O. V. R. Co., 228 U. S. 596; Bear Gulch Placer Min. Co. v. Walsh, 198 F. R. 351; Newgass v. St. L., etc. R. R. Co., 54 Ark. 140, 15 S. W. 188, 4 Am. R. R. & Corp. Rep. 44; Albion R. R. Co. v. Heiser, 84 Calif. 435, 24 Pac. 288; San Francisco, etc. R. R. Co. v. Taylor, 86 Calif. 246, 24 Pac. 1027; Chicago & Alton R. R. Co. v. Goodwin, 111 Ill. 273; 40 Am. Rep. 598; McClarren v. Jefferson School, 169 Ind. 140, 82 N. E. 73; Toledo, etc. R. Co. v. Dunlap, 47 Mich. 546; Illinois Cent. R. R. Co. v. Hoskins, 80 Miss. 730, 32 So. 150, 92 Am. St. Rep. 612; Cochran v. Missouri, etc. R. Co., 94 Mo. App. 469, 68 S. W. 367; Burns v. School District, 61 Nebr. 351, 85 N. W. 284; Omaha Bridge & T. R. Co. v. Whiting, 68 Nebr. 389, 399, 94 N. W. 513, 99 N. W. 525; Baltimore, etc. R. R. Co. v. Bouvier, 70 N. J. E. 158, 62 Atl. 868.

Section 2477 U. S. Revised Statutes (Act July 26, 1866) gives a right of way over public lands of the United States.

A railroad has repeatedly been held to be a highway within the meaning of this act.

Tennessee, etc. R. Co. v. Taylor, 102 Ala. 224; Flint & Pierre Marquette R. Co. v. Gordon, 2 N. W. 648.

To acquire the benefits given by section 2477, U. S. Revised Statutes, the only thing necessary to be done is the construction of the road or highway and a patent is unnecessary.

Estes Park Toll Road Co. v. Edwards, 3 Colo. App. 74; Flint & Pierre Marquette R. Co. v. Gordon, 2 N. W. 648.

As to what is a possessory claim, see Spokane Falls & N. W. R. Co. v. Zeigler, 176 U. S. 65, 42 L. Ed. 79.

Cases *apparently* adverse to general rule that improvements cannot be included in damage.

U. S. v. Jacks, 47 Cal. 515; Abion R. R. Co. v. Hesser, 84 Cal. 435; Hibbs v. C. & S. W. R. Co., 39 Ia. 340; Daniels v. C. I. & N. R. Co., 41 Ia. 52; Graham v. Connorsville & N. C. J. R. Co., 36 Ind. 463; Merriman v. Brown, 128 Mass. 391; Richmond & Mecklenburg R. Co v. Humphreys, 90 Va. 425; Van Cise v. Long Isl. R. R. Co., 3 Hun. 613; N. Y. W. S. & B. R. Co. v. Gennett, 44 Hun. 317; Village of St. Johnsville v. Smith, 184 N. Y. 341; Mills on Eminent Domain, sec. 148.

A. T. HANNETT of Gallup and VIGIL & JAMESON of Albuquerque, for appellee.

All the cases cited by appellant distinguish between an entry made by a railroad company in good faith and one made in bad faith.

Consolidated Turnpike Co. v. N. & O. V. R. Co., 228 U. S. 596; Searl v. School Dist., 133 U. S. 553, 33 L. Ed. 740; Bear Gulch Placer M. Co. v. Walsh, 198 Fed.

A., T. & S. F. Ry. Co. v. Richter, 20 N. M. 278.

351; Hunt v. M. P. R. Co., 76 Mo. 115; Village of St. Johns v. Smith, 184 N. Y. 341; U. S. v. Land in Monterey County, 47 Cal. 515; Albion R. R. Co. v. Hesser, 84 Cal. 435; Graham v. Connorsville & R. R. Co., 36 Ind. 463; Meyriam v. Brown, 128 Mass 391; Cohen v. St. L. Ft. S. & W. R. Co.; 34 Kan. 158; Baltimore & N. Y. R. R. Co. v. Bouvier, 70 N. J. E. 158; Jacksonville T. & K. W. R. Co. v. Booream, 14 L. R. A. 533; Morgan's Appeal, 39 Mich. 675; Daniels v. C. I. & N. R. Co., 41 Ia. 52; sec. 9, c. 97, Laws 1905; Toledo R. Co. v. Dunlap, 47 Mich. 456; Oregon R. & Nav. Co. v. Mosier, 14 Oreg. 519; R. R. v. Deal, 90 N. C. 110; North Hud. County R. R. Co. v. Booream, 28 N. J. E. 450; Newport News R. Co. v. Lake, 105 Va. 311, 54 S. E. 328; Norfolk & O. V. R. Co. v. Turnpike, 111 Va. 131; Price v. Weehawken F. Co., 31 N. J. E. 31; In re Village of White Plains, 108 N. Y. S. 598; Jones v. N. O. & S. R. Co., 70 Ala. 227; Greve v. First Div. St. Paul & Pac. R. Co., 26 Minn. 66; Justice v. Nesquehonning R. Co., 87 Pa. St. 28; Preston v. The Sabin Ry. Co., 70 Tex. 375; Burgess v. Clark, 13 Iredell Law, 109 (Tenn.); Emerson v. The Western Union Ry. Co., 75 Ill. 176; North Hudson Co. R. R. Co. v. Boorgeam, 28 N. J. Eq. 450; Aspinwall v. Chicago & N. W. R. Co., 41 Wis. 474; Calif. Southern R. R. Co. v. Southern Pac. R. R. Co., 75 Calif. 293; Denver & R. G. Ry. Co. v. Stancliff, 4 Utah, 117, 7 Pac. 530; San Francisco R. R. Co. v. Taylor, 86 Calif. 246; Newgass v. St. L., etc. Ry. Co., 54 Ark. 140; Cochran v. The Mo. Kas. & Tex. R. Co., 94 Mo. App. 469; Burns v. School District, 61 Nebr. 351, 85 N. W. 284; Chicago & Alton R. R. Co. v. Goodwin, 111 Ill. 273; Alldridge v. The Stillwater Bd. of Education, 15 Okla. 354, 82 Pac. 827; McClarren v. Jefferson School, 169 Ind. 140, 82 N. E. 73; Briggs v. Chicago K. & W. R. Co., 56 Kas. 526, 43 Pac. 1131; Ill. Central R. R. Co. v. Haskins, 80 Miss. 730, 32 Sou. 150; Chase v. School District, 8 Utah, 231, 30 Pac. 757; Newport News R. C. v. Lake, 105 Va. 311, 54 S. E. 328; Lewis Co. v. McGeorge, 47 Wash. 414, 92 Pac. 268; Bellingham Bay R. R. Co. v. Strand, 14 Wash. 144, 44 Pac. 140; Lake Whatcom Logging Co.

v. Calvert, 33 Wash. 126, 73 Pac. 1128; DeBual v. The
Freeport R. R. Co., 111 Ill. 499; Trimmer v. Railroad
Co., 55 N. J. L. 46; Norfolk & O. V. Ry. Co. v. Turnpike,
111 Va. 131; Price v. The Weehawken Ferry Co., 31 N.
J. Eq. 31; In Re Trustees of Village of White Plains,
108 N. Y. Sup. 598; Mills on Eminent Domain (2d Ed.),
sec. 148.

### BRIEF OF APPELLEE ON REHEARING.

The decision of the court violates the fourteenth
amendment of the Constitution of the United States.

The decision of the court, in three different respects,
does not follow the positions taken by appellant.

### OPINION OF THE COURT.

PARKER, J.—The appellant brought proceedings to
condemn 1.86 acres of land which it was occupying for
railroad purposes. The commissioners appointed by the
court assessed the value of the premises at $3,000. Ob-
jections to the report being filed by appellant, the court
resubmitted the matter to the same commissioners, who
made a second return fixing the value of the premises at
$4,500. Exceptions to the report were filed by appel-
lant and overruled by the court, whereupon appellant ap-
pealed from the award to the district court. A trial was
had in Bernalillo county, on change of venue, resulting
in a verdict for $7,750 in favor of appellee, and a judg-
ment was rendered thereon; motion for a new trial hav-
ing been overruled. The railway company appeals.

There is but one main controversy in the case, and that
is as to the measure of compensation to be applied. At
the instance of the appellee, the court applied the rule
that the measure of compensation, under the facts in the
case, was the value of the land and the improvements put
upon the land by the appellant, in the form of railway
trackage, consisting of rails, ties, roadbeds, culverts, etc
Appellant contested this proposition, and insisted that the
proper measure of compensation was the value of the

surface of the land taken, without the improvements. A solution of this question, under the facts in this case, depends upon two further considerations, viz.: First, the nature and character of the right of appellee at the time of the entry by appellant; and, second, the character of the entry by appellant.

[1] It appears that appellee filed a declaratory statement in the United States Land Office for the purchase of the land as coal lands, on March 8, 1907. On account of faulty verification of the declaratory statement, it was reverified on September 8, 1907. The appellant entered upon the land in October, 1907, and completed its railroad in November, 1907. Appellee made final payment for the land on January 14, 1908, and a patent was issued to her January 18, 1909.

Appellant urges that, under the circumstances, appellee was not in a position to assert any of the rights of an owner of the land, as against appellant, at the time of its entry thereon, and that the character of its entry therefore is immaterial. Counsel argue that, at the time appellant entered and laid its tracks, appellee was neither an owner of the title nor the owner of a possessory right to the land, and that therefore none of the doctrines in regard to willful trespass, as affecting the measure of compensation, have any application.

An examination of the facts and of the laws of Congress on the subject of coal entries will show, we think, that appellee had, at the time of the entry by appellant, at least a possessory right to the land in controversy. Appellant's Exhibit B, to which attention is called in the briefs, shows that appellee settled on the land on May 31, 1906, filed declaratory statement in the United States Land Office for the W. ½ of the N. E. ¼ of section 4 of township 15 N. of range 18 W., on March 8, 1907, and reverified the same, in accordance with instructions from the General Land Office, on September 8, 1907. Appellant's Exhibit D shows that on January 14, 1908, appellee paid for the N. W. ¼ of the N. E. ¼ (lot 2) of said section, containing 39.99 acres, and on January 18, 1909, received patent therefor.

This entry was made under the provisions of sections 2347-2349, R. S. U. S., 5 Fed. Stat. Ann. 55, 56, (U. S. Comp. St. 1913, §§ 4659-4661). Section 2348, supra, clearly shows by its provisions that the government contemplates that citizens may take possession of the public lands, and may open and improve coal mines thereon, in which event they shall have a preference right of purchase. Section 2349, supra, requires the filing of the declaratory statements, within a certain prescribed time after taking possession, in order to preserve the preference right, and section 2350 (U. S. Comp. St. 1913, § 4662) requires payment for the land within one year after the filing of the declaratory statement. This statute as clearly contemplates a right to possession of coal lands, as against any intruder, as does the other federal legislation in regard to homesteads and pre-emption claims. ○

Counsel for appellant argue that appellee had not possessory claim or right to the land at the time of the appellant's entry, and cite Spokane, etc., Ry. Co. v. Zeigler, 167 U. S. 65, 17 Sup. Ct. 728, 42 L. Ed. 79, to the point.

An examination of that case will show that the definition of "possessory claims," as used in section 3 of the Act of March 3, 1875, c. 152, 18 Stat. L. 483, 6 Fed. Stat. Ann. 501 et seq. (U. S. Comp. St. 1913, § 4923), is not inclusive of all cases of "possessory claims" to parts of the public domain. In that case the pre-emption entryman had made final proofs, and, at the time of the entry by the railway company, nothing remained to be done except for the Land Department to examine the same and issue patent. Hence the court said:

"While it is true that, at the time when the company took possession of the plaintiff's land, the latter had not yet received his patent, but had only made the final proofs and filed the same in the Land Office of the United States and had tendered the purchase price thereof, and had demanded from the register and receiver of said Land Office a final receipt evidencing his entry of and payment for said land, yet it further ap-

pears that before the plaintiff brought this suit his purchase money had been accepted and a patent from the United States, for the said tract of land had been duly executed and delivered to him. The plaintiff, then, having been in possession of the land in question, and having done and performed all that the law required to give him a right to a patent, before the railroad company seized the land, we think the grant of the patent, subsequent to such seizure, but before the bringing of the suit, operated to confer upon the plaintiff the right to demand and recover damages as the owner of the fee. The railroad company having taken possession without the consent of the owner, and not having instituted proceedings to condemn, was a trespasser, and liable to indemnify the plaintiff in respect to his possession and title, as they were shown to exist at the time the suit was brought."

It thus appears that the court was not attempting to give a general definition of "possessory claims" to portions of the public domain, but that it held simply that the facts before the court showed that the entryman had such a "possessory claim" at the time of the unlawful entry by the railway company. The court cites and relies upon Washington, etc., R. R. Co. v. Osborn, 160 U. S. 103, 16 Sup. Ct. 219, 40 L. Ed. 356. In that case Osborn had settled upon the unsurveyed public domain with intent to enter the land as a pre-emptor, and was shown to be qualified as such. The railroad company filed a bill to establish its right to a right of way over the lands without compensation. The court said:

"It must therefore be conceded that Osborn did not, by maintaining possession for several years and putting valuable improvements thereon, preclude the government from dealing with the lands as its own, and from conferring them on another party by a subsequent grant. On the other hand, it would not be easy to suppose that Congress would, in authorizing railroad compa-

nies to traverse the public lands, intend thereby
to give them a right to run the lines of their
roads at pleasure, regardless of the rights of set-
tlers."

In the case at bar, the possessory right of appellee is
much clearer than in the last case cited. Here there was
not only actual possession under a clear right, but the
exact limits of the claim were defined by the declaratory
statement filed in the United States Land Office. The
right to purchase the land had been formally initiated in
the mode provided by law, and the right to maintain pos-
session and to complete the purchase had clearly become
vested in the appellee.

Counsel for appellant argue that its rights are not gov-
erned by the provisions of the Act of March 3, 1875, su-
pra, but that it has attempted to exercise its right under
the provisions of section 2477, R. S. U. S., 6 Fed. Stat.
Ann. 498 (U. S. Comp. St. 1913, § 4919). The section
is as follows:

"The right of way for the construction of high-
ways over public lands, not reserved for public
uses, is hereby granted:"

The argument proceeds that while under the Act of
March 3, 1875, certain certificates of incorporation, pro-
files, maps, etc., must be filed by the railroad company
prior to the actual construction of the railroad, in order
to cut off intervening rights of entrymen, and whose rights
are specifically reserved by the act, no such requirement
existed as to rights acquired under section 2477, R. S. U.
S.; that the building of the road upon the ground is all
that is required and no patent is necessary; and, as a nec-
essary consequence, the building of the railroad operates as
a grant to it of the right of way which supersedes any
right of, or grants to, entrymen which have not gone to
patent prior to the building of the road. Counsel cite
and rely upon Flint, etc., R. Co. v. Gordon, 41 Mich. 420,
2 N. W. 648; Estes Park Toll Road Co. v. Edwards, 3
Colo. App. 74, 32 Pac. 549; and Tenn., etc., R. Co. v.
Taylor, 102 Ala. 224, 14 South. 379.

In the case in 41 Mich. 420, the opinion is by Judge Cooley, and for that reason, if for no other, deserves the most careful consideration. In that case a bill was filed to quiet title to the right of way across the land embraced within a homestead entry. The entryman made his entry first. The railroad was afterwards constructed across the land against the protest of the entryman. The entryman afterwards made final proof and received his patent. The court said:

"The homestead entry vested no title in the defendant, but it gave to him under the law a right of possession which he might perfect by continued occupancy and improvement. If he failed to perfect it, what right he had reverted to the United States. If he perfected it, he was entitled to a patent, which related back to the time when his entry was made, and took date with it. French v. Spencer, 21 How. 228 [16 L. Ed. 97]; Shepley v. Cowan, 91 U. S. 337 [23 L. Ed. 424]; Johnson v. Ballou, 28 Mich. 379. This is a statement of familiar and undisputed principles.

"But in this case there is what seems at first blush to be a conflict of grants. The defendant made his entry first, but the complainant completed its road over the land before the defendant obtained his patent. To acquire the benefit tendered by the act of 1866 nothing more was necessary than for the road to be constructed. No patent is required in such cases, but the offer and acceptance taken together are equivalent to a grant. The complainant therefore, by accepting the offer of the government, obtained a grant of the right of way which was at least perfectly good as against the government, and must be held to be perfectly good as against this defendant unless his patent antedates it by relation, or unless the equities springing from his possession and improvement would preclude any right being acquired adversely.

"Some equities the defendant unquestionably has, but we do not think he is entitled to what he claims from the doctrine of relation. That doctrine is remedial, and its use in the law is to prevent wrongs and punish trespasses. Stout v. Keyes, 2 Doug. [Mich.] 184 [43 Am. Dec. 465]; Ballou v. O'Brien, 20 Mich. 304. As has been repeatedly declared in this court, it can never be so applied as to make that a wrong which was innocent when done, or so as to divest rights which, by the sanction of law, have been acquired since the time from which the relation dates. Bacon v. Kimmell, 14 Mich. 281; Whipple v. Farrar, 3 Mich. 436 [64 Am. Dec. 99]; Blackwood v. Brown, 29 Mich. 483. Now, leaving out of view for the present the equities of the defendant, we cannot say that complainant was guilty of any wrong when going on to construct its road across this land. There was lawful authority for building the road, and we may assume that the crossing of this land was a necessity. It is not very clear that under the general railroad law so peculiar an interest as that of the defendant could have been appropriated by adversary proceedings, and it is certain that complainant could have been under no obligation to proceed to an appropriation of the interest of the United States, if that interest was freely granted by that act of 1866. as we think it was. Complainant accepted the offer of that act, and the construction of its road under the offer would be not only a sufficient but also an equitable consideration. And when the right was thus perfected, we do not think it could be defeated by any act of relation springing from the accomplishment of something subsequently."

It thus appears that the court held that a homestead entryman has no vested title, but merely the right to possession; that he might perfect right to title and patent, in which case his rights, ordinarily, relate back to the time

A., T. & S. F. Ry. Co. v. Richter, 20 N. M. 278.

of entry; that the doctrine of relation, however, is reme-
dial and will not be applied so as to make that unlawful
which was lawful when done; that the action of the rail-
road company in entering upon the land was not a legal
wrong, although against the protest of the entryman; that
the entryman's interest was of such a peculiar nature as
not to authorize condemnation proceedings, and that no
such proceedings, of course, could be maintained against
the United States; that the building of the railroad was
an acceptance of the grant made by Congress, and no
patent was required, and, being prior in point of time to
the entryman, it was not to be defeated by the doctrine
of relation as applied to the entryman's patent. With
great respect for the opinion of the Michigan court, we
must say that we think an important and controlling con-
sideration was overlooked in the decision. It is this: The
section quoted above (2477) grants a right of way over
"public lands" only. It is true that, even after a valid
entry by a citizen of a portion of the public domain, the
land is still "public land" in the sense that the govern-
ment is still the owner of the same. But, when a valid
entry has been made by a citizen, that portion of the pub-
lic land covered by the entry is segregated from the pub-
lic domain, and is appropriated to the private use of the
entryman, and is not subject to further entry, and is not
included in subsequent grants made by Congress. 32 Cyc.
808; Holt v. Murphy, 207 U. S. 407, 28 Sup. Ct. 212,
52 L. Ed. 271; McMichael v. Murphy, 197 U. S. 304, 25
Sup. Ct. 460, 49 L. Ed. 766; Hodges v. Colcord, 193 U.
S. 192, 24 Sup. Ct. 433, 48 L. Ed. 677; Hastings, etc.,
Ry. Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112, 33
L. Ed. 363; Kansas, etc., Ry. Co. v. Dunmeyer, 113 U.
S. 629, 5 Sup. Ct. 566, 28 L. Ed. 1122.

In Holt v. Murphy, supra, it is said that the general
rule is as follows:

"That, wherever an entry has been made of a
tract of land, that tract is segregated from the
mass of public lands subject to entry until the
existing entry is disposed of."

In Hastings, etc., R. Co. v. Whitney, the court, after citing some of its previous decisions, said:

"In the light of these decisions, the almost uniform practice of the department has been to regard land, upon which an entry of record valid upon its face has been made, as appropriated and withdrawn from subsequent homestead entry, pre-emption settlement, sale, or grant until the original entry be canceled or declared forfeited; in which case the land reverts to the government as part of the public domain, and becomes again subject to entry under the land laws."

In Kansas, etc., Ry. Co. v. Dunmeyer, supra, there was a contest between a railway company and a homesteader, as to whether the lands embraced in the homestead entry were embraced in the railroad grant by Congress, and the court said:

"The company had no absolute right until the road was built, or that part of it which came through the land in question. The homestead man had five years of residence and cultivation to perform before his right became absolute. The pre-emptor had similar duties to perform in regard to cultivation, residence, etc., for a shorter period, and then payment of the price of the land. It is not conceivable that Congress intended to place these parties as contestants for the land, with the right in each to require proof from the other of complete performance of its obligation. Least of all is it to be supposed that it was intended to raise up, in antagonism to all the actual settlers on the soil, whom it had invited to its occupation, this great corporation, with an interest to defeat their claims, and to come between them and the government as to the performance of their obligations. The reasonable purpose of the government undoubtedly is that which it expressed, namely, while we are giving liberally to the railroad company, we do·

> not give any lands we have already sold, or to which, according to our laws, we have permitted a pre-emption or homestead right to attach. No right to such land passes by this grant. No interest in the railroad company attaches to this land or is to be founded on this statute."

The argument in the last case, although based upon a different statute, is especially applicable here. It is not reasonable to suppose that Congress intended by section 2477, R. S. U. S., to grant to railroads a right to enter upon the possession of entrymen of coal lands, who by its laws had been invited to enter upon and take possession of the same, and who, by certain steps provided by law, were to have the right to purchase them. Such lands do not fall within the terms of the grant under the section.

The case of Tenn., etc., R. Co. v. Taylor, supra, relied on by counsel for appellant, does not support the position contended for. The court decided that the grading of a roadbed for a railroad localized the grant by Congress and vested title in the appellant, although the ties and rails were not laid until after appellee had filed on the land; the roadbed having been graded long prior to the initiation of appellee's rights. Appellee then claimed appellant had abandoned its former rights, and, the jury having found otherwise, the court refused to sustain the claim.

The case of Estes Park Toll Road Co. v. Edwards, supra, is not in point, it being a question as to the right of taxation of a toll road, the title whereof had been acquired under section 2477, R. S. U. S.

The argument advanced in many of the cases in support of appellant's position is that the section is a grant in praesenti. It is a grant in praesenti, in the sense that the offer by the government is a continuing one, subject to acceptance at any time, and, when so accepted, the title at once passes to the grantee, without further action on the part of the government, and relates back to the date of the act. But can the section be properly considered as a grant in praesenti in the sense that the title passes to the grantee as of the date of the act against intervening right? We think not. This would, undoubtedly, be

true as against the government. But as against intervening rights, to apply the doctrine of relation to rights under the section is in direct violation of well-known principles, and directly contrary to what is announced in Flint, etc., Ry. Co. v. Gordon, 41 Mich. 420, 2 N. W. 648, supra, as to the true rule for the application of the doctrine. Support for the position taken is to be found in many of the more modern cases, a few of which will be noticed.

In Red River, etc., R. Co. v. Sture, 32 Minn. 95, 20 N. W. 229, the railroad company justified under section 2477, R. S. U. S., but the court held that this section was never intended to apply to railroads. The court, however, interprets the Act of March 3, 1875, supra, and the reasoning, it seems to us, is equally applicable to section 2477. The court says:

"This act is in the nature of a general offer to the public, which takes effect and becomes operative as a grant to a particular company only when it accepts its terms by a compliance with the conditions precedent prescribed in the act itself. This proposition rests on elementary principles. A grant, like any other contract, must have two parties—a grantor and grantee— and an offer not accepted constitutes no contract. This is clearly the theory on which the act is framed."

In Wallowa County v. Wade, 43 Or. 253, 72 Pac. 793, the court interpreted section 2477, R. S. U. S., and said:

"The right is necessarily indefinite, and, in a sense, floating and liable to be extinguished by a sale or disposition of the land until the highway is surveyed and marked on the ground, or in some other way identified or designated; but when the public authorities lay out and locate a road over public land of the United States by surveying and marking it on the ground, or by some legislative act, or when it is shown by user, the right becomes complete, and an intention to

accept the dedication is manifested, and subsequent settlers on the land take subject to the easement."

In Tholl v. Koles, 65 Kan. 802, 70 Pac. 881, the court, in interpreting section 2477, R. S. U. S., held that:

Neither "does it appear that the act of Congress would have had application in those particular cases. It could have no effect where the lands had ceased to be a part of the public domain before the acceptance by the Legislature or the public, nor where private rights and interests had attached to public lands before the enactment (referring to state legislation accepting the congressional grant)."

In McAllister v. Okanogan Co., 51 Wash. 647, 100 Pac. 146, the court, in a very clear opinion, holds that the grant under section 2477, R. S. U. S., takes effect as of the date of acceptance and does not take precedence over the rights of a settler on unsurveyed public lands prior to such acceptance. To the same effect, see City of Butte v. Mikosowitz, 39 Mont. 350, 102 Pac. 593.

We conclude that under section 2477, R. S. U. S., no right can be secured which is superior to the right of an intervening coal entryman who has filed his declaratory statement prior to the acceptance of the grant by a railroad company.

[2] It appears from the evidence in this case that the entry by the appellant was with force and against the express protest of the appellee. Her husband made the protest, and the employes of the railroad used physical force upon him, blacking his eyes, and bloodying his nose. It is a clear case of willful trespass with physical force. As we have before seen, the appellee, at this time, had a vested right to the possession of the land, superior to that of appellant. The exact nature of the right, and the exact meaure of compensation to be applied for the actual taking of the land itself, at the time it was taken, need not be determined, because appellee had absoluute title by patent at the time these proceedings were instituted.

We have thus a case of a public service corporation, pos-
sessed of the right of eminent domain, which has wilfully,
forcibly, and unlawfully intruded upon the rights of an
entryman, and has made valuable improvements upon the
land in the form of a railroad grade, rails, ties, etc., and
which, after patent to the coal entryman, is seeking to
condemn a right of way for the use of its said improve-
ments over the land embraced in said entry and patent.
The question, then, is as to the proper measure of com-
pensation to be awarded to the coal entryman.

The proceeding for the condemnation of the land is
under the provisions of chapter 97, Laws 1905, which
is a comprehensive act, and is designed to cover the whole
subject. Section 9 of the act furnishes the measure of
compensation and damages to be awarded, and is as
follows:

> "Sec. 9. For the purposes of assessing com-
> pensation and damages, the right thereto shall
> be deemed to have accrued at the date of the no-
> tice, and its actual value at that date, shall be
> the measure of compensation of all property to
> be actually taken, and also the basis of dam-
> ages to property not actually taken but injuri-
> ously affected, and in all cases where such dam-
> ages are legally recoverable. If an order be
> made letting the plaintiff into possession as pro-
> vided in this act, the compensation and damages
> awarded shall draw lawful interest from the
> date of such order. No improvements put upon
> the property, subsequent to the date of the serv-
> ice of notice, or put thereon after the actual
> taking of the land, shall be included in the as-
> sessment of compensation or damages."

There is no question in this case as to the damages
for injury to property not taken, as none are claimed.
The sole question is as to the measure of compensation
for what was actually taken.

As before seen, the court instructed the jury to take
into consideration the value of the railroad improvements
in assessing the compensation to appellee.

The whole question, as to the correctness of this doctrine, turns upon the law of fixtures, and its application to public service corporations possessing the power of eminent domain. It is an ancient and well-established doctrine of the common law that, where personal property is affixed to real estate by a trespasser or disseisor, the same becomes a part of the real estate and becomes the property of the true owner of the fee. 19 Cyc. 1056; Ewell on Fixtures (2d Ed.) p. 86.

The doctrine is founded, says Ewell, upon a presumption that the trespasser has voluntarily parted with his property, or has intended it as a gift to the owner of the soil. This presumption may, or may not, be well founded in fact. We doubt whether, under ordinary circumstances, the trespasser intends to part with his property or to donate it to the owner of the fee. Such intention may, however, sometimes exist. A much better foundation for the doctrine, it seems to us, may be found in the principle that the trespasser has no right of reentry, and cannot retake his property without committing a new wrong to the owner of the fee, which the law will not tolerate. He thus loses his title against his will, because the law will not permit him to violate its rules in order to reclaim his property.

But this doctrine, it seems to us, on principle, and certainly on authority, has no application in condemnation proceedings. The state, and, by delegation, municipal and other corporations, possess the power of eminent domain; that is, the power to enter upon and appropriate the private property of the citizen and devote it to a public use, rendering just compensation therefor. The fact that the state or the public service corporation has previously trespassed upon the land of the citizen has nothing whatever to do with the right to thus enter and appropriate the same. It is a continuing right to be exercised whenever the machinery provided by law for the ascertainment of the value of what is taken shall be set in motion. A public service corporation may therefore always enter the premises, take, use, and enjoy, not only

its own property thereon, but may take the land itself and use the same for its public purposes.

The same reason, then, why an ordinary trespasser loses his property which he has affixed to the soil of another, does not exist as against the state, or its grantees of the power of eminent domain.

This conclusion in no way deprives the citizen of any of his legal rights. If the entry be by a naked, technical trespass, he may certainly have nominal damages, and perhaps the value of the use and occupation of the premises in an appropriate action for that purpose. If the entry be by violence, and personal injury be done the owner, he certainly may have actual damages and, in some instances, no doubt, exemplary or punitive damages. He may have ejectment, and he may have relief in equity by way of injunction. But the public service corporation still has the continuing right, at least until ousted by legal process, to condemn the land, and to enter and claim and use the land and its own property thereon for its public purposes.

The leading case in support of the position of the appellee, that the railroad improvements, constructed upon the premises by the appellant in this case, should be taken into consideration in assessing appellee's compensation for what was taken, is the case of Village of St. Johnsville v. Smith, 184 N. Y. 341, 77 N. E. 617, 5 L. R. A. (N. S.) 922, 6 Ann. Cas. 379. In that case the village of St. Johnsville took possession of the appellant's land, who forbade the entry. The question in the case was whether the improvements, in the form of a waterworks system, should be taken into consideration in estimating the value of the land upon which they had been erected. The court held that the improvements should be taken into consideration as a part of the land. This case reviews the earlier New York cases, and cases from other states. The decision rests the doctrine upon the proposition that the entry was without the consent of the owner. The court cites United States v. Land in Monterey County, 47 Cal. 515, Graham v. Connersville

R. Co., 36 Ind. 463, 10 Am. Rep. 56, and Mills on Eminent Domain (2d Ed.) sec. 148, as authority supporting the view of the court. It also cites 2 Lewis on Eminent Domain (2d Ed.) 1154, Randolph on Eminent Domain, p. 222, and Justice v. Nesquehoning R. Co., 87 Pa. 28, as supporting the doctrine that, where a corporation has the power of eminent domain, the improvements placed upon the land are not to be regarded as fixtures in subsequent condemnation proceedings, regardless of the character of the entry. The court flatly repudiates the latter authorities, and says:

> "It is conceded that the appellant forbade the entry upon his land; and the engineer who supervised the work for the village testified that he understood that whatever was done was done in opposition to the will of Mr. Smith. * * * We are quite clear that it should not receive the sanction of the courts of this state. So far as actual intent is concerned, a personal trespasser who annexes a structure to another's freehold does not mean that it shall become the property of the landowner any more than does a trespassing railway company or municipality which does the same thing in contemplation of acquiring the land at some future time by the exercise of the power of eminent domain. The law affixes the consequences to the act, not the intent. It says to those who invoke the power of eminent domain as well as to all others: 'If you invade land without legal right and place structures of a permanent character thereon, those structures belong to the landowner.' There is no more harshness in applying the rule to one class of trespassers than to the other. In both cases its application tends to prevent the perpetration of a wrong. Its operation in this state has been, and will undobtedly continue to be, most salutary in constraining those municipal and other corporations which the state has authorized to exercise the power of eminent do-

main not to assume the possession of lands in advance of any right so to do, and thus practically nullify, during the period of unlawful possession, that provision of the Constitution which guarantees the citizen against being deprived of his property for public use without just compensation. The difference is obvious between a clear case of trespass like that before us and a case in which after a lawful entry, followed by improvements upon the land, the occupant finds it necessary to institute condemnation proceedings by reason of a doubt as to the title or for the extinguishment of liens upon the property."

The case of Graham v. Connersville R. Co., 36 Ind. 463, 10 Am. Rep. 56, announced the same doctrine as the case in New York.

In connection with the Indiana case, a curious fact appears, which, so far as we have observed, has passed unnoticed by any of the courts citing it. It is this: The decision is based entirely upon a constitutional provision in Indiana, as follows:

"No man's property shall be taken, by law, without just compensation; nor, except in case of the state, without such compensation first assessed and tendered."

The court expressly founds the decision upon this constitutional restriction. But this case, although often cited throughout the country, is no longer authority upon the question. In Skinner v. Ft. Wayne R. Co. (C. C.) 99 Fed. 465, Baker, District Judge for the district of Indiana, criticizes and repudiates the case, and says:

"The case is unsound in principle and is in conflict with the great weight of authority."

In McClerren v. Jefferson School Tp., 169 Ind. 140, 82 N. E. 73, 13 L. R. A. (N. S.) 417, 13 Ann. Cas. 978, the Supreme Court of Indiana expressly overrules the case of Graham v. Connersville R. Co., 36 Ind. 463, 10 Am. Rep. 56, and declares the weight of authority to be to the contrary, citing, besides textbooks, a long line of cases from Pennsylvania, Alabama, Kansas, Illinois, and other states.

The case of United States v. Land in Montercy County, 47 Cal. 515, was a case where the agents of the government entered upon the lands of the owner by force and ejected the owner and erected a lighthouse for the government. The court applied the common-law doctrine that, where personal property is attached to the soil by a tort-feasor, it becomes a part of the land and must be taken into consideration in estimating the compensation to the owner in condemnation proceedings. The Supreme Court of California, however, in Albion, etc., R. Co. v. Hesser, 84 Cal. 435, 24 Pac. 288, interprets the case in 47 California to have been a case where the entry was by the strong hand, and with no intention to condemn and pay a just compensation on the part of the government. The court say, in the later case, that, unless those were the facts in the former case, then the former case should be declared overruled. California is the only state which recognizes any such distinction as the one just mentioned, and we must say that we can see no ground whatever for the distinction. The distinction, as we understand it, is between a case where the entry is by a technical trespasser without force, and not wilfully, and in a case of a willful trespasser with force. In the former case personal property affixed to the soil by the government or a corporation possessing the power of eminent domain does not become a fixture and is not to be taken into account in condemnation proceedings. In the latter case personal property affixed to the soil by the government or by such corporation does become a fixture and must be taken into account in computing the compensation to the owner. If this is a correct interpretation of the position of the California court, we cannot follow it. The legal quality of the act in either of the two cases mentioned above is identical. The consequences of the act in one of the cases may be different from the other, and the measure of damages to the person injured may be different in one of the cases from the other. But the act in each instance is of the same legal characteristics, and we know of no reason in law why the consequences should be different in one case

from the other, as to the improvements becoming or not becoming fixtures to the land.

The case of Hunt v. Mo. Pac. R. Co., 76 Mo. 115, is to the same effect as the New York and Indiana cases cited above, and relies upon them as authority for the decision. See, also, Norfolk, etc., Ry. Co. v. Turnpike, 111 Va. 131, 68 S. E. 346, to same effect, and relying upon the New York cases.

The foregoing cases are the only cases cited by counsel for appellee which would in any way justify the position taken, although dicta to the same effect appears in some other cases cited. They are a small minority of the holdings throughout the country, and we do not deem them sound in principle, and must decline to follow them. The great weight of authority is directly to the contrary, and they are collected in a note to the case of Village of St. Johnsville v. Smith, 6 Ann. Cas. at page 382, 5 L. R. A. (N. S.) 922. Among them a few will be noticed.

In Toledo, etc., Ry. Co. v. Dunlap, 47 Mich. 456, 11 N. W. 271, the defendant Dunlap was the owner of the fee of the lands sought to be taken by condemnation. It appeared that negotiations with a view to acquiring the right of way had failed, and that the railway company took possession of the land prior to the instituting of condemnation proceedings. It does not appear the possession was taken forcibly, but it inferentially appears that it was without the consent of the owner. The court, per Campbell, Justice, points out very clearly that the laying of the railway track upon the lands of another is not intended to be incorporated with the soil, except for purposes attending the possession; and in a proceeding to obtain legal and permanent right to the possession of the land it would be absurd to compel it to buy its own property. He points out that the owner may have a right of action for the tortious occupancy previous to the condemnation proceeding, but that it forms no part of the measure of compensation to the owner. He refers to the case of Morgan's Appeal, 39 Mich. 675, with approval. In the latter case, the railroad company entered upon the land, pending negotiations for its acquisition by private

contract. It had reasonable expectation of getting the right of way without difficulty, but the court refused to base its opinion upon that ground. It expressly decides that the proceeding to condemn land, under the law of eminent domain, is not an action to recover damages for past trespasses nor an ejectment. The proceeding is held to be one to secure, in a lawful way, the right to take and use the land, and the only thing the owner is entitled to is such damages or compensation as ought justly to be made.

In Jacksonville, etc., R. Co. v. Adams, 28 Fla. 631, 10 South. 465, 14 L. R. A. 533, the Supreme Court of Florida expresses itself as firmly opposed to the doctrine maintained in New York, and a few other states. It is said:

"It is true that if persons or corporations vested with the power of eminent domain enter upon and appropriate private property to their use, without the consent of the owner, before taking the steps required by law to condemn the same, the owner may resort to trespass for damages, ejectment for possession, or to equity for an injunction against the use of the land. Still, where such an illegal entry has been made by a body possessing the power of eminent domain, it may condemn the property entered upon and thus secure a right to the possession and enjoyment thereof. If an entry has been made by the express or implied consent of the landowner, it is clear that he should not have the value of what has been put upon the ground; and the better authority is that the same rule also applies in the absence of any consent by the owner. Lewis, Em. Dom. § 507."

The court then reviews most of the cases and expressly repudiates the doctrine of Graham v. Connersville, etc., Co., 36 Ind. 463, 10 Am. Rep. 56.

In the case of Oregon R., etc., Co. v. Mosier, 14 Or. 519, 13 Pac. 300, 58 Am. Rep. 321, the Supreme Court of Oregon holds that the ancient doctrine of the common

law in regard to fixtures has no application to questions of compensation to owners of land sought to be taken in condemnation proceedings.

In Jones v. New Orleans, etc., Ass'n, 70 Ala. 227, the Supreme Court of that state expressly adheres to the Pennsylvania, Michigan doctrine, and holds that, as between a railroad which enters without right and the owner of the soil, a railroad does not become a part of the real estate, but remains personal property, and should not be taken into consideration in estimating the compensation to the owner.

In Greve v. St. Paul, etc., R. Co., 26 Minn. 66, 1 N. W. 816, the railroad company entered upon the land in controversy and built a railroad thereon without the consent of the owners. The court holds that, in proceedings to ascertain the compensation to be paid the owner, the improvements put upon the land by the railroad company were not to be taken into consideration, and points out the fact that such proceedings are to ascertain the compensation for what is taken, and in this particular differs from an action of ejectment in which the owner of the fee might rely upon the strict common-law doctrine of fixtures.

In Newgass v. Railway Co., 54 Ark. 140, 15 S. W. 188, the railroad company had entered upon the land as a trespasser, and the owner therefore claimed that the railroad had become a fixture to the soil, and should be taken into account in estimating the amount of his compensation. This was denied by the court, citing the Pennsylvania, Michigan, Alabama, and other cases.

In Chicago, etc., R. Co. v. Goodwin, 111 Ill. 273, 53 Am. Rep. 622, the court expressly adheres to the doctrine that although the entry was without right, and so that it was a trespass, in a subsequent proceeding for the condemnation of the land, the owner thereof will not be entitled to include the improvements in estimating his compensation.

In Aldridge et al. v. Board of Education, 15 Okl. 354, 82 Pac. 827, the school board entered upon the property and erected the school building, and afterwards proceeded

to condemn the property for public use. The Supreme Court of Oklahoma in that case expressly disapproves of 36 Ind. 463, 10 Am. Rep. 56, and holds that the great weight of authority is to the effect that the owner, under such circumstances, can only recover for the land, and that he cannot recover for the improvements placed thereon during such occupancy, · citing practically all of the cases on the subject.

In Seattle & M. R. Co. v. Corbett, 22 Wash. 189, 60 Pac. 127, the Supreme Court of Washington held squarely that the doctrine of fixtures has no application in condemnation proceedings, and that the law on the subject is so well settled that it no longer demands extended discussion, citing the Pennsylvania, Michigan, Florida, and other cases.

The leading case on this subject, perhaps, is Justice v. Nesquehoning Valley R. Co., 87 Pa. 28. In that case the court says:

"The common-law rule is undoubted that a trespasser, who builds on another's land, dedicates his structures to the owner. The reason is obvious; for, like him who sows where he cannot reap, he can obtain no advantage by his wrong, and, having affixed his chattels to the realty, they become a part of it, and he cannot add further injury by tearing them down. Even a tenant is to a modified extent affected by the same rule. If he improves under a covenant, the covenant governs his right of removal. So, if · in favor of trade he erects structures for his business, doing no unnecessary or irreparable injury to the land, yet, having done this without consent, he must remove his erections before the expiration of his term; otherwise he will be presumed to dedicate them to his lessor. There is also to be noticed a clear distinction between putting down a railroad track under a lease, and an act of appropriation of the land under a charter. This is clearly pointed out in Heise v. Pennsylvania Railroad Co., 62 Pa. 67. The very intent

of an appropriation of land is to place upon it. and own and use the structures necessary to carry out the charter purpose. * * * This is not the case of a mere trespass by one having no authority to enter, but of one representing the state herself, clothed with the power of eminent domain, having a right to enter, and to place these materials on the land taken for public use —materials essential to the very purpose which the state has declared in the grant of the charter. It is true the entry was a trespass, * * * . but his redress cannot extend beyond his injury. Another evident difference between a mere tortfeasor and a railroad company is this: The former necessarily attaches his structure to the freehold, for he had no less estate in himself, but the latter can take an easement only, and the structures attached are subservient to the purpose of the easement."

The eminent text-writer, Judge Lewis, in his work, at page 670, par. 507, sustains the same doctrine. We have not access to Mills on Eminent Domain, and are unable therefore to examine the reasoning upon which he asserts the contrary doctrine.

It seems clear, both upon reason, and in accordance with the current of authority, that in condemnation proceedings the law of fixtures has no application, and we so hold.

As this case is to be again tried, a further question will be disposed of.

[3] Appellant complains that the court added interest to the amount of the award of $7,750, from February 13, 1912, the date the condemnation proceedings were filed, down to the date of the judgment on the verdict. Counsel cite section 3219, C. L. 1897, as controlling the proposition adversely to the action of the court. We do not deem this section of the statute as controlling. On the other hand, appellee argues that by reason of the provision of section 9 of chapter 97, Laws 1905, as follows, "if an order be made letting the plaintiff into possession

A., T. & S. F. Ry. Co. v. Richter, 20 N. M. 278.

as provided in this act, the compensation and damages awarded shall draw lawful interest from the date of such order," the owner is entitled to interest from the date of taking possession of the land by the corporation instituting the condemnation proceedings.

While the provision quoted does not in terms cover a case where possession has been taken prior to condemnation proceedings, as in this case, we believe that the provision shows a legislative intent that the owner shall receive interest from the time his possession is invaded, either with or without an order of the court. We therefore overrule the objection of appellant as to the allowance of interest.

It follows from what has been said that the district court was in error in instructing the jury that they should take into consideration the value of the railroad improvements in computing the amount of compensation to be allowed the appellee, and for this reason the judgment will be reversed, and the cause remanded to the district court, with instructions to award a new trial, and it is so ordered.

ROBERTS, C. J., and HANNA, J., concur.

## ON REHEARING.

PARKER, J.—The appellee in this cause has set up the following contentions in her motion for a rehearing for the first time, viz.:

I. That the decision and judgment of this court reversing the judgment of the trial court is in conflict with and violation of the fourteenth amendment of the Constitution of the United States, in that said judgment and the authority claimed under it deprives this appellee of property without due process of law.

II. That said decision and judgment of this court is in conflict with and violation of, the fourteenth amendment of the Constitution of the United States, in that said judgment and the authority claimed under it deprive this appellee of property without due process of law, in

that it permits the appellant corporation in this case to take the private property of this appellee for public use without just compensation.

III. That said decision and judgment of this court is in conflict with and violation of the fifth amendment of the Constitution of the United States, in that it permits the appellant corporation to take the private property of this appellee for public use without just compensation.

IV. That said decision and judgment of this court is in conflict with and violation of the fifth amendment of the Constitution of the United States, in that it allows the taking of private property of this appellee by appellant corporation before the institution of condemnation proceedings, without just compensation.

V. That said decision and judgment of this court is in conflict with and violation of the fifth amendment of the Constitution of the United States, in that it allows the taking of private property of this appellee by appellant corporation before the institution of condemnation proceedings, without just compensation, when there was no adjudication in this case, and could have been none. that this property was invaded and actually taken in 1907 for public purposes rather than for private purposes of this appellant corporation.

VI. That this decision and judgment of the court sanctioned the invasion and actual taking of the property of appellee by appellant corporation as of the date of 1907, adjudicating that it should pay interest thereon from that date, whereas the law states that damages shall be assessed as of the date of the notice of condemnation, which was in 1912, which decision is contrary to the fourteenth amendment of the Constitution of the United States, in that it permits property to be taken without due process of law by permitting property to be invaded and taken as of one time and yet compels the owner to have its value assessed as of another time, more than four years later in the cause at bar.

We have carefully considered each and all of the federal questions raised by these contentions, and by our views of the law we are compelled to decide that said decision and

judgment of this court is not repugnant in any of the par-
ticulars mentioned to either the fifth or fourteenth amend-
ment of the Constitution of the United States, and that
our decision and judgment is in accord with all the pro-
visions of the Constitution of the United States. We
therefore decide the federal questions raised by the appel-
lee against the contentions of appellee.

ROBERTS, C. J., and HANNA, J., concur.

### SYLLABUS BY THE COURT.

