# Tennessee & Coosa Railroad Co. v. Taylor.

### Statutory Action of Ejectment.

1 *A railroad is a highway.*—A railroad is a highway, within the meaning of section 2477 of the Revised Statutes of the United States, which grants "a right-of-way for the construction of highways through public lands, not reserved for public uses."

2. *Abandonment.*—Abandonment includes both the intention to abandon and the external act by which the intention is carried into effect; but the essence of abandonment being the intent, the question of abandonment *vel non* is determinable upon the facts of each particular case which must be submitted to the jury.

3. *Ejectment; what constitutes abandonment.*—Where, in an action of ejectment against a railroad company to recover lands occupied by the defendant as a right-of-way, the evidence shows that more than 20 years before suit was brought, and while such lands belonged to the government, the defendant located its line and constructed its road-bed by building culverts, embankments and cuts, but then ceased work, and did not return to it until after the plaintiff, 19 years after the construction of the road-bed, purchased from the government

[Tennessee & Coosa Railroad Co. v. Taylor.]

the quarter section in which the said right-of-way was located, when the railroad company removed the timber which had grown on the road-bed, repaired it and constructed its road, the question as to whether there had been an abandonment of such right-of-way by the defendant before plaintiff purchased was for the jury; and therefore it was error for the court to take this inquiry from the jury by giving the general affirmative charge in favor of the plaintiff.

APPEAL from the Circuit Court of Etowah.

Tried before the Hon. JOHN B. TALLY.

This was a statutory action in the nature of ejectment, brought by the appellee, J. C. Taylor, against the Tennessee & Coosa Railroad Co., and was commenced on December 9, 1890. The facts of the case are sufficiently stated in the opinion.

W. H. DENSON, for appellant.—A railroad is a public highway within the meaning of section 2477 of the Revised Statutes of the United States. To constitute an abandonment there must be the concurrence of the intention to abandon, and the actual relinquishment of the property, so that it may be appropriated by the next comer.—1 Amer. & Eng. Encyc. of Law, p. 1 and note 5; 40 Amer. Dec. note 464; *Wilson v. Glenn*, 68 Ala. 383–386; *McCall v. Pryor*, 17 Ala. 533; *Bernstein v. Humes*, 78 Ala. 135, 142; Tiedeman on Real Property, §§ 739–740; 9 Amer. & Eng. Encyc. of Law, 365; *White, &c., Transp. Co. v. Ver. Central R. R. Co.*, 21 Vt. 590; *Olcott v. Supervisors*, 16 Wall. 678–698; *Baldwin v. R. R. Co.*, 103 U. S. 426.

AMOS E. GOODHUE, *contra*.—Section 2477 of the Revised Statutes of United States introduced in evidence, has no reference whatever to railroads. It grants simply a right-of-way for highways, and though a railroad is in some sense a highway, yet it is evident it is not a highway within the meaning of the statute referred to.— *Larsen v. Oregon Railway Navigation Co.*, 44 Amer. & Eng. R. R. Cas. 92; *Savannah & Fla. R, R. Co. v. Davis*, 43 Amer. & Eng. R. R. Cas. 542; *Texas W. Ry. Co. v. Wilson*, 18 S. W. Rep. 325; *Midland Ry. Co. v. Smith*, 25 N. E. Rep. 153; *Beattie v. Carolina Cent. R. R. Co.*, 12 S. E. Rep. 914; *Hendrick v. Carolina Cent. R. R. Co.*, 8 S. E. Rep. 236.

McCLELLAN, J.—This is a statutory action by Taylor against the railroad company for the recovery of land. The complaint contains two counts. In the first count the land claimed is thus described : "A strip of land one hundred feet wide in the southeast fractional quarter of section 32, township 10, range 5, in Etowah county, Ala., being 50 feet on either side from the centre of the road-bed of the Tennessee & Coosa Railroad Company as far as the said road passes through said fractional quarter section."The second count claims the whole of the quarter section. The cause was tried on issue joined on the plea of "not guilty"—the general issue—which admitted defendant's possession of the southeast fractional quarter of section 32, including, of course, the one hundred feet strip specially claimed in the first count. Upon request in writing the court gave the affirmative charge for the plaintiff; and the propriety of that action is the only matter presented for review.

Plaintiff made a *prima facie* case by introducing a certificate of purchase of the quarter section in question by himself for the United States on November 11, 1889, and rested. The defendant proved that more than twenty years before suit brought it had surveyed and located its line of railway across the land and on the strip described in the complaint, and that at that time a road-bed for its said road had been thereon constructed by the building of necessary embankments and cuts, and the construction of culverts. It further appeared that, after this was done and before any rails or any crossties had been put on the road-bed, defendant desisted from the work and did not return to it until after the purchase by the plaintiff, when the timber, which had meantime grown on the road-bed, was removed, the road-bed repaired, and upon it defendant's railway was constructed.

The theory of defendant is that it acquired title to the one hundred feet strip as a right-of-way by the location of its line and construction of its road-bed thereon, prior to the sale to plaintiff, by force of section 2477 of the Revised Statutes, which declares that "the right-of-way for the construction of highways over public lands, not reserved for public uses, is hereby granted." That a railroad is a "highway" within this section would seem to have been the understanding of Congress in the pass-

,age of the act of 1856, in aid of the construction of this and other railroads in Alabama, for while careful provision is made by that act for the acquisition of a right-of-way over reserved land embraced in the general terms of the grant but specially excepted therefrom, no provision is therein made for rights-of-way over other public lands, an omission which, in view of the fact that at that time there was no law, State or Federal, other than this section for the acquisition of rights-of-way over public lands, is most reasonably accounted for on the theory that Congress supposed that section 2477 applied to railroad rights-of-way over all public lands "not reserved to public uses." And this is the construction put on the section in every instance of its direct adjudication.— *Flint & Pere Marquette R'y Co. v. Gordon*, 41 Mich. 420; *Verdier v. Port Royal R. R. Co.*, 15 S. C. 476; *Sams v. Port Royal & Augusta R'y. Co.*, 15 S. C. 484. Indeed there is nothing in the adjudged cases against this view except the merest dictum in *Red River, &c., R. R. Co. v. Sture*, 32 Minn. 95, a case arising under the act of March 3, 1875, (18 U. S. Stat. at Large, 482), which superseded the application of section 2471 to railroads, and was in the nature of an amendment by implication to that effect, not however affecting rights acquired under the section in question prior to the amendatory enactment. We concur in the construction put on the statute by the Michigan and South Carolina courts, and hold that it operated to grant rights-of-way for the construction of *railway* highways over public lands at the time the defendant located its line and constructed its road-bed on the strip sued for.

Taking this view of the statute it is not and could not be reasonably contended that what the defendant did toward the construction of a highway along this strip across said fractional quarter of section 32 was insufficient to localize the grant and vest title to the strip for the uses and purposes of a highway in the defendant. That the location of defendant's road, and the construction of its road-bed on this strip, vested in the company, in other words, the rights of possession and user is not denied, if, as we hold, the statute is applicable. It is insisted, however, that any right defendant may have had in the long past was abandoned by it. Whether this be true or not it is not for us and was not for the

court below to decide. The visible acts and omissions relied on to show abandonment were brought out in the evidence, as also the recent acts and conduct of the defendant in returning to the construction of its highway, repairing and rehabilitating its road-bed, building thereon the superstructure of ties and rails, and completing and operating the road. "Abandonment includes both the intention to abandon and the external act by which the intention was carried into effect," and "as intent is the essence of abandonment, the facts of each particular case are for the jury."—1 Amer. & Eng. Encyc. of Law, p. 1, notes and authorities; *Wyman v. Hurlburt*, 12 Ohio, 81; s. c. 40 Am. Dec. 461, n. 464. On the view we take of this case the only issue in it was upon this question of abandonment *vel non*, and the result of this issue depended upon the jury's finding as to the defendant's intent. The court by giving the affirmative charge for the plaintiff improperly took this inquiry from the jury. The instruction was erroneous, and must work a reversal of the judgment; the cause will be remanded.

Reversed and remanded.