(89 South. 518)

## WESTERN UNION TELEGRAPH CO. v. LOUISVILLE & N. R. CO.
### (3 Div. 491.)

(Supreme Court of Alabama.   June 30, 1921. Rehearing Denied July 15, 1921.)

1. **Easements** ⊂⟫30(1)—**Essence of inquiry of abandonment is the intention of the owner.**

   The essence of abandonment of an easement by the owner is his intention.

2. **Easements** ⊂⟫36(3)—**Lapse of time and nonuser evidentiary of intention to abandon an easement.**

   In absence of other evidence going to show an intention to abandon a right of easement, mere lapse of time and nonuser will not serve to justify a finding of abandonment, but they are evidentiary of an intention to abandon, and, when considered with other evidence of the intention to abandon, may be entitled to great weight according to the circumstances.

3. **Telegraphs and telephones** ⊂⟫11—**Abandonment of easement in railroad right of way shown.**

   Where an easement for running telegraph lines along a right of way on a railroad was not used for 40 years, and during this time the telegraph company had accepted an exclusive lease of rights for its lines, and had later started condemnation proceedings to take part of the right of way for its lines, the nonuser, coupled with the acceptance of the lease and condemnation proceedings, sufficiently evidence an abandonment of the easement.

Appeal from Circuit Court, Montgomery County; William L. Martin, Judge.

Suit by the Western Union Telegraph Company against the Louisville & Nashville Railroad Company. From a decree denying the relief prayed, complainant appeals. Affirmed.

Francis R. Stark, of New York City, Rushton & Crenshaw, of Montgomery, and Forney

---

⊂⟫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Johnston, of Washington, D. C., for appellant.

A tenant may, after his lease expires, set up title within himself. 77 Ala. 571; Bigelow on Estoppel, 562. The railroad cannot invoke the constitutional provision against one telegraph company acquiring a competing parallel line. 202 Ala. 542, 81 South. 44; 196 U. S. 415, 25 Sup. Ct. 369, 49 L. Ed. 537; 30 Minn. 54, 14 N. W. 258. The transactions shown in the bill are executed transactions, and the constitutional provisions, relating to foreign corporations do not apply. 202 Ala. 542, 81 South. 44. Where one corporation is a mere instrumentality or adjunct of another the parent company will be considered in equity as the real party in interest. 202 U. S. 621; (C. C.) 51 Fed. 49; 139 Fed. 546, 71 C. C. A. 530; 211 Mo. 419, 111 S. W. 109, 17 L. R. A. (N. S.) 1167, 124 Am. St. Rep. 786, 14 Ann. Cas. 742; 95 Tex. 51, 65 S. W. 27, 55 L. R. A. 861. Possession of an easement in land is notice to all the world of the claim of the possessor. 98 Minn. 39, 107 N. W. 744, 13 L. R..A. (N. S.) 49; 13 L. R. A. (N. S.) 132, note VI. Easements acquired by condemnation are of equal dignity with those acquired by grant. 87 Ala. 633, 6 South. 140; 14 Cyc. 1186. There was no adverse holding or adverse possession. 205 Ala. 49, 87 South. 539; 177 Ala. 140, 58 South. 419; 74 Ohio St. 295, 78 N. E. 423, 113 Am. St. Rep. 962; 24 Pick. (Mass.) 106, 35 Am. Dec. 305; 2 C. J. 143; 20 C. J. 1072. The judgments of condemnation are valid and res judicata as to the Louisville & Nashville. 202 Ala. 542, 81 South. 44; 92 Ala. 570, 9 South. 329; 84 Ala. 560, 3 South. 475, 5 Am. St. Rep. 393; 86 Ala. 102, 5 South. 587, 11 Am. St. Rep. 21; 23 Cyc. 1253, 1256, 1408; 15 R. C. L. 1015; section 3581, Code 1907. There was no laches. 186 Ala. 234, 65 South. 183; 10 R. C. L. 396. There was no nonuser or abandonment. 202 Ala. 542, 81 South. 44; 102 Ala. 224, 14 South. 379; 109 Me. 361, 84 Atl. 530, 42 L. R. A. (N. S.) 741; 1 C. J. 67; 6 C. J. 943; 24 Pick. (Mass.) 106, 35 Am. Dec. 305; 123 Cal. 535, 56 Pac. 453; 131 Ky. 1, 114 S. W. 317, 22 L. R. A. (N. S.) 880; 134 N. Y. 450, 31 N. E. 896, 18 L. R. A. 535. No estoppel is shown. 2 Pom. Eq. 1651–1664; Bigelow on Estoppel, 654–660; 26 Ala. 547, 62 Am. Dec. 745; 105 Ala. 451, 17 South. 221; 201 Ala. 560, 78 South. 956; 21 Ala. 534; 189 U. S. 260, 23 Sup. Ct. 624, 47 L. Ed. 802; 114 Ala. 408, 21 South. 995, 62 Am. St. Rep. 111; 113 Ala. 131, 20 South. 999; 105 Ala. 249, 16 South. 704.

Jones, Thomas & Jones and Goodwyn & McIntyre, all of Montgomery, for appellee.

Under the undisputed facts, complainant has never surrendered to the defendant possession of the telegraph rights of way here involved, and hence is estopped by the lease contract of June, 1884, from maintaining

this bill setting up a title to said right of way. 202 Ala. 542, 81 South. 44; (C. C. A.) 250 Fed. 199; (C. C.) 120 Fed. 364; 24 Cyc. 946; 77 Ala. 571; 71 Ala. 570. The alleged title, or rather muniments of title, confer no rights or title on complainant. Authorities supra, and 159 Ala. 524, 49 South. 229; 78 Ala. 42; 34 Ala. 188; 57 Ala, 304; 69 Ala. 332; 13 Ala. 346; section 289, Const. 1901; 97 Ky. 675, 31 S. W. 476; 144 Ky. 324, 138 S. W. 291, Ann. Cas. 1913A, 633. The defense of adverse possession and prescription was fully established. Authorities supra. 177 Ala. 544, 58 South. 453; 181 Ala. 144, 61 South. 100, Ann. Cas. 1915C, 1226; 202 Ala. 213, 80 South. 35; 132 Ala. 674, 32 South. 663; 195 Ala. 467, 70 South. 639; 170 Ala. 289, 54 South. 415; sections 4862 and 4846, Code 1907; 87 Ala. 436, 6 South. 349. The railroad was a bona fide purchaser. 34 Cyc. 1478; 137 Ala. 271, 34 South. 991; 153 Ala. 443, 45 South. 251, and authorities supra. There was a complete abandonment, if there ever was a condemnation. 10 R. C. L. 3, 240; 15 Cyc. 1025. Lewis on Eminent Domain, 1499; 1 R. C. L. 6, and authorities supra. The complainant is estopped. 11 A. & E. Enc. of Law, 421; 77 Ala. 157; 16 Cyc. 796 et seq.; 159 Ala. 645, 49 South. 255; 82 Ala. 102, 2 South. 468; 88 Ala. 424, 7 South. 248; 200 Ala. 379, 76 South. 295.

McCLELLAN, J. The Western Union Telegraph Company, appellant, filed this (substituted) bill against the Louisville & Nashville Railroad Company, appellee, for the purpose, aside from injunction to maintain the status quo pendente lite, of invoking the aid of equity to put the appellant into possession and to assure to it the enjoyment of an easement, or right of way, on the west side of appellee's railway line from Montgomery, Ala., to that line's intersection with the Alabama-Tennessee state line. The right to the easement claimed by the appellant is ascribed and attributed to condemnations of rights of way asserted to have been effected in the year 1877; the condemnor being the appellant's predecessor in right.

The report of the former appeal of this cause contains a more complete statement of facts from which the asserted right to relief is derived. W. U. Tel. Co. v. L. & N. R. R. Co., 202 Ala. 542, 81 South. 44.

Among other matters in bar of the relief thus sought, the defendant (appellee) set up the concluding abandonment of the easement in question. On former appeal touching the subject of abandonment, it was soundly held:

"Mere nonuser of a right of way or other easement, acquired by grant or condemnation, however long continued, will not of itself work an abandonment and forfeiture of the right. Such nonuser must be accompanied by an intention to abandon, and this intention must be clearly deducible from the declarations or conduct of the claimant, or from the facts and cir-

cumstances incidental to his nonuser. 14 Cyc. 1187, c; Stein v. Dahm, 96 Ala. 481, 11 South. 597; T. & C. R. R. Co. v. Taylor, 102 Ala. 224, 14 South. 379. The question is one of fact."

[1, 2] The essence of the inquiry of abandonment vel non of an easement by the owner is his intention. In the absence of other evidence going to show an intention to abandon the right or easement, mere lapse of time and nonuser will not serve to justify a finding that an easement has been abandoned by the owner; but lapse of time and nonuser are evidentiary of an intention to abandon, and, when considered with other evidence of such intention, may be entitled to great weight according to the circumstances. 1 R. C. L. p. 6; 9 R. C. L. pp. 810, 811, 812–813; W. U. T. Co. v. L. & N. R. R. Co., 202 Ala. 548, 549, 81 South. 44; T. & C. R. R. Co. v. Taylor, 102 Ala. 224, 228, 14 South. 379.

[3] The original bill in this cause was filed in the year 1917. The substituted bill (interposed in 1919) avers that the original condemnor of a right of way on the west side of the railways between Montgomery and the Alabama-Tennessee state line, the Atlantic & Pacific Telegraph Company, appellant's predecessor and grantor in the conveyance of 1881, never took possession of the right of way so condemned in 1877, nor has the appellant ever constructed a telegraph line on the west side of said railways, the reason assigned being that appellant's predecessor (grantor), as well as appellant, had, in 1877, and ever since, a serviceable telegraph line on the east side of said railways between Montgomery and the Alabama-Tennessee state line under contracts of lease to that end. The fact is thus conceded that neither appellant nor its predecessor (grantor) has ever acted under or upon the asserted condemnations of 1877; that 40 years elapsed between the date of these alleged condemnations and the filing of the original bill in this cause; and that 36 years elapsed between the date the appellant claims to have acquired the rights of the condemnor and the filing of the original bill in this cause. Considering these great periods of absolute inaction in the premises, in connection with the other evidence (to be summarized) indicative of an intention alone consistent with a purpose to forego and abandon, the pleaded defense of abandonment of the easement of way thus asserted is established. Besides the stated inaction for so great periods with no assertion or avowal thereof by appellant or its predecessor, additional evidence of intention to abandon the easement is afforded by these acts and facts, to omit reference to any others: (a) In 1884 the appellant leased from the appellee the exclusive, unrestricted right to maintain its telegraph line on the appellee's railway lines in this state for a term of 25 years and thereafter until 1 year succeeding notice of intention to terminate, incorporating therein provisions vesting the appellant with the right to use and proceed in the name of the appellee to protect the exclusive right thus granted. (b) In 1912 appellant sought to condemn rights of way, located as the existing lines were, for telegraph purposes, over the appellee's lines in Alabama; and through an injunction pendente lite sought to have maintained the status quo until the condemnation causes were determined. It was expressly averred in the petition to condemn, and repeated in the bill in the injunction suit, that actual necessity (Ala. Code, § 3867) required the particular way and land described in the proceedings, and then occupied by the wire lines of the appellant on the railways of the appellee.

These proceedings to condemn and the ancillary injunction to preserve the existing situation pending final determination evince an intent alone consistent with the purpose manifested by the long periods of complete failure or omission to avow, much less to assert, the right to an easement predicated of the condemnations averred to have been accomplished in 1877, and conveyed to this appellant in 1881. This effort to condemn, initiated in 1912, in consequence of an expressly averred actual necessity for the right of way described in the pleadings, alone consists with a conscious recognition, if not substantial avowal, of the fact that the appellant was not invested with a right to an easement of way above and over appellee's rail lines. It is inconceivable that that effort to condemn would have been made if appellant thought itself then vested with the ownership of an existing easement for the same purpose, and of the same nature as that sought to be appropriated through the condemnation. The evidential effect of this deliberate action by appellant to condemn an easement renders peculiarly impressive and potent, under the circumstances disclosed by the record, the long period during which no suggestion, claim, or avowal of an existing right was made by appellant or its predecessor in the grant of 1881. The fact that the condemnation proceedings, commenced in 1912, sought the appropriation of an easement on the east side of the appellee's right of way, whereas the latterly asserted condemnations of 1877 described the easements as being on the west side of the condemnee's rail lines of that period, does not modify, much less neutralize, the probative effect of the effort to condemn in 1912. No averment or contention for the then (1912) existence of an actual necessity for the easement sought to be appropriated on the east side of appellee's right of way could have been asserted if the appellant already possessed the same right under the condemnations of 1877 to use and enjoy the like easement on the west side of the appellee's right of way. Obviously an actual necessity for the easement could not be predicat-

ed of the mere act of locating the wire line on the opposite side of the appellee's limited right of way for railroad purposes; this, too, without regard to the fact that at places, for limited spaces at least, the appellant's wire line has been long located on the west side of appellee's right of way through Alabama.

The mentioned contract of lease of 1884, between the parties to this cause, contributes to further confirm the correctness of the conclusion that the appellant long ago abandoned the easement described in the condemnation proceedings of 1877. This contract of lease gave appellant wide, extended, exclusive, unrestricted locational right to maintain for the period of the lease's operation its wire lines on appellee's right of way, including bridges, throughout its entire railway system, not only over the rail lines then subject to the appellee's control, but also over those that might thereafter become subject, through construction, lease, or purchase, to the appellee's dominion. Aside from the possible effect of this lease of 1884 as generative of an estoppel operative upon appellant's erstwhile rights in the premises, the lease's exclusive character and quality is also evidential of an intent to abandon the wholly unavailed-of easement defined in the condemnation proceedings of 1877. It is hardly credible that the appellant would have engaged for this exclusive lease, with its attendant expressly protective provisions, for the operation of its wire lines over appellee's railways in Alabama, if the appellant regarded itself as already the owner of such an easement, even on the west side of appellee's main right of way in Alabama. The failure or omission in 1884 to suggest or to note, if not to avow, its ownership of the easement now sought to be affirmed and its enjoyment enforced, contributes materially to illustrate the intent with which appellant allowed these great periods of total inaction to pass, and to refer the acceptance of such an exclusive lease to an intent to forego and abandon any earlier right attributable to the condemnations effected by the appellant's grantor of 1881. That appellant already (in 1884 and thereafter) was operating its wire line on appellee's right of way is not a reason contradictory of the entertainment by appellant of the abandonal intent the evidence ascribes to the appellant, or an explanation neutralizing the indicated effect of the evidence. On the contrary, the existence of the lease-created, later exclusive, use of appellee's railways and those of its predecessors affords reason and an explanation for appellant's complete inaction in respect to the enjoyment of the condemnations of 1877, and also serves to refer appellant's conduct all along to a course that only consists with the conception that, for all practical purposes, it then had, and through the lease contracted for, the substance (and more) of the easement it would now assert and have enforced. Having no then present need or use for the easement ascribed to the condemnations of 1877, and having leased to an effect projecting into the future, that nonneed for 25 years or more, the appellant manifested through its acts the quite natural disposition and intent to forego, to abandon, any right predicable of the condemnations of 1877.

The easements sought to be effectuated having been abandoned before the original bill was filed, the appellant was properly denied the relief prayed. The decree appealed from is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.