Kenneth Zadnichek, his wife Ann Zadnichek, and Meadow Breeze, L.L.C. (hereinafter collectively referred to as "the Zadnicheks"),[1] who own the servient tenements over which three separate easements run, filed an action to quiet title, claiming that the easements had been terminated by adverse possession, abandonment, or failure of purpose. Following a bench trial, the circuit court determined that the easements had not been terminated. The Zadnicheks appealed to the Alabama Supreme Court. The supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975. We affirm in part and reverse in part.
The property involved in this appeal was inherited by three sisters — Louise Whatley, Clara Prochazka, and Frances Bishop — from their father. Each sister received a 10-acre tract adjacent to Baldwin County Highway 9 and a 40-acre tract to the east of their 10-acre tract. Louise Whatley testified that the original purpose of the easements at issue in this case was to allow each sister access to her eastern 40-acre tract.
Louise Whatley's 10-acre tract encompassed what is labeled as Parcels "B" and "Y" on the diagram accompanying this opinion as an appendix (the appendix was prepared based on an exhibit provided by one of the parties); her 40-acre tract encompassed what is labeled as "Parcel C." *Page 704 
Clara Prochazka's 10-acre tract encompassed what is labeled as "Parcel A"; her 40-acre tract encompassed what is labeled as "Parcel D". Frances Bishop's 10-acre tract encompassed what is labeled as "Parcel X"; her 40-acre tract encompassed what is labeled as "Parcel E." Kenneth Zadnichek purchased Parcel A from Clara in 1977; he purchased Parcels B and C from Louise in 1990.[2] The three deeds to Zadnichek recite the legal description of the respective parcels and then state that the grants are subject to a 40-foot "right-of-way easement" or "road right-of-way" over and across the eastern or southern boundaries of the tracts. The easements on Parcels A and B run along the eastern boundaries of those two parcels. The easement on Parcel C runs along the southern boundary of that parcel.
Jimmie and Faye Fidler, who now own what are labeled as "Parcel D" and "Parcel F," are successors in title to Clara Prochazka and Louise Whatley. Connie and Mark Glassford, who now own what is labeled as "Parcel E," are the daughter and son-in-law of the Fidlers and successors in title to Frances Bishop.
 I. The Parcel A Easement
Kenneth Zadnichek testified that when he bought Parcel A in 1977, the easement on that parcel was impassable because of a large gully. He said that, without asking anyone's permission, he immediately fenced all of Parcel A, including the easement, to keep in his wife's horse and to prevent anyone from crossing the property. The evidence was undisputed that, for 26 years, the Zadnicheks had raised cattle and grown hay on the easement. The evidence was also undisputed that no other property owner had crossed the easement since Kenneth Zadnichek had fenced it.
Frances Bishop testified that she knew the Zadnicheks' fence blocked the easement and that her husband had talked to the Zadnicheks about removing the fence but that the Zadnicheks had "refused to take [the fence] down." She said that no one had used the easement running along the eastern boundary of Parcel A after 1977, when Kenneth Zadnichek bought the property from her sister Clara.
Louise Whatley testified that the Zadnicheks did not have permission to put up a fence across the Parcel A easement; she said she knew the fence "was not supposed to be there." She explained that, after Kenneth Zadnichek bought Parcel A, her family continued to cut wood to the east of Parcel A but that they never crossed the easement because the Zadnicheks "wouldn't let us cross it." She said, "That's why we went to the east side of [the easement] because [Kenneth Zadnichek] blocked it off." Jimmie Fidler testified that when he drove his cattle he never crossed the Parcel A easement because the Zadnicheks' "fence was there and I respected it."
The trial court concluded that the Zadnicheks had not met their burden of proof with respect to adverse possession of the easement across Parcel A. The Zadnicheks argue that the evidence does not support that conclusion. We agree.
Alabama recognizes two types of adverse possession: (1) statutory adverse possession pursuant to § 6-5-200, Ala. Code 1975 (10 years), and (2) adverse possession by prescription (20 years). See Sparks v. Byrd, 562 So.2d 211 (Ala. 1990) "`In an adverse-possession case, the party *Page 705 
asserting a claim to the property through adverse possession must show by clear and convincing evidence that there was "actual, hostile, open, notorious, exclusive, and continuous" possession for [the requisite] period.'" Wadkins v. Melton, 852 So.2d 760,765 (Ala.Civ.App. 2002) (quoting Henderson v. Dunn,871 So.2d 807, 810 (Ala.Civ.App. 2001) (quoting in turn Grooms v.Mitchell, 426 So.2d 820, 822 (Ala. 1983))). "The presence of a fence, which is an outstanding symbol of possession, coupled with normal acts of use in appropriation of the land, sufficiently satisfies the requirements of adverse possession." Bearden v.Ellison, 560 So.2d 1042, 1045 (Ala. 1990).
In this case, we conclude, as we did in Wadkins v. Melton,supra, that the Zadnicheks' use of the easement was actual, hostile, notorious, exclusive, and continuous for 26 years. The appellees do not contend otherwise. The appellees' contention that the Zadnicheks did not sufficiently prove their adverse-possession claim is based on two arguments: (1) that the Zadnicheks executed deeds and mortgages that referred to the easement and, the appellees say, the Zadnicheks thereby acknowledged the validity of the easement;[3] and (2) that the Zadnicheks never expressed an intent to adversely possess the easement on Parcel A.
The first argument ignores the fact that one who seeks title by adverse possession is not relying on "paper title" and, in fact, intends to overcome another's "paper title" by possessory acts.See Graham v. Hawkins, 281 Ala. 288, 290, 202 So.2d 74, 75
(1967) (stating that "appellant and his predecessors in title have had paper title to the triangular strip which is the subject of this controversy, but appellees and their predecessors have had it fenced as part of their yard and claimed it for thirty-seven years"). The second argument overlooks the fact than an adverse-possession claimant is not required to verbalize his intent to adversely possess the property. His intent is demonstrated by his possessory acts.
 "While statements of intent may be entitled to consideration by the trial court, it is primarily the acts of the adverse claimant that a trial court must look at to determine objectively whether the claimant has exerted a claim of right to a disputed area openly and exclusively for [the requisite period]. Kubiszyn v. Bradley, 292 Ala. 570, 298 So.2d 9
(1974)."
Bearden v. Ellison, 560 So.2d at 1044.
We hold that the trial court's judgment with respect to the easement on Parcel A is unsupported by the evidence; that part of the judgment is reversed, and, on remand, the trial court is instructed to render a judgment for the Zadnicheks.
 "[I]t is a rare case when this Court will overturn a finding by a trial judge who hears an adverse possession case presented ore tenus, but this is one of those rare cases.
 "[The adverse-possession claimant's] evidence was uncontradicted, and we hold that as a matter of law, [he] hostilely, openly, notoriously, actually, exclusively, and continuously possessed the property for the requisite statutory period of 10 years."
Lilly v. Palmer, 495 So.2d 522, 530 (Ala. 1986) (quoted inWadkins v. Melton, 852 So.2d at 768). *Page 706 
 II. The Parcel B Easement
At trial, Kenneth Zadnichek acknowledged that he bought Parcel B from Louise Whatley in 1990 and that the Zadnicheks filed the instant quiet-title action in 1999, a period less than the 10 years required for statutory adverse possession or the 20 years required for adverse possession by prescription. Therefore, the Zadnicheks do not rely on adverse possession for their claim to title to the Parcel B easement. Instead, they argue that the easement on Parcel B was terminated by abandonment or failure of purpose. The trial court determined that the easement on Parcel B had not been abandoned; it made no finding with respect to the failure-of-purpose claim.
 A. Failure of Purpose
Although the trial court's judgment did not address the Zadnicheks' failure-of-purpose argument, we choose to address it here. The Zadnicheks contend that the original purpose of the easements was to allow Louise Whatley, Clara Prochazka, and Frances Bishop access from their eastern 40-acre tracts to their 10-acre tracts adjacent to Highway 9. Citing Tatum v. Green,535 So.2d 87 (Ala. 1988), and Sasser v. Spartan Foods Systems,Inc., 452 So.2d 475 (Ala. 1984), the Zadnicheks contend that, because all parties now have access to Highway 9 by alternate ways, the easements have failed of their purpose and should be terminated. In Tatum, the supreme court recognized the general rule that
 "an easement given for a specific purpose terminates as soon as the purpose ceases to exist, is abandoned, or is rendered impossible of accomplishment. Sasser v. Spartan Food[s] Systems, Inc., 452 So.2d 475
[,478] (Ala. 1984). . . ."
535 So.2d at 88. In Tatum, the court explained that, in order to determine whether an easement is given for a specific purpose, it is necessary to examine the words of the instrument creating the easement:
 "The Court must look to the written instrument to determine the scope of the grant. City of Montgomery v. Maull, 344 So.2d 492 (Ala. 1977).
 "The deed from the U.S. Government to [the easement holder's] father did not specify the purpose for which the easement was given but simply granted `a perpetual road right-of-way easement.'"
535 So.2d at 88. In the present case, the record does not contain the original deeds to the three sisters — Clara, Louise and Frances; it contains only the deeds to Kenneth Zadnichek from Clara and Louise. In those deeds, the grantors reserved 40-foot "right-of-way easements" or "road rights-of-way" over the properties conveyed to Zadnichek. According to the portions of the Tatum decision already quoted, one might wonder why the Zadnicheks rely on Tatum, because the language in Zadnichek's deeds — "right-of-way easements" or "road rights-of-way" — is no more specific regarding the purpose for which the easements were reserved than was the language in the Tatum deed — "a perpetual road right-of-way easement."
The Zadnicheks rely, however, on the following portion ofTatum:
 "If the language is ambiguous or uncertain in any respect, the surrounding circumstances, including the construction placed on the language by the parties, are taken into consideration so as to carry out the intention of the parties. [City of Montgomery v.] Maull, [344 So.2d 492 (Ala. 1977)]. Furthermore, if subject to interpretation, the extent of the easement depends on the intention of the parties as gathered from the terms of the deed and the situation of *Page 707 
the land. Cobb v. Allen, 460 So.2d 1261 (Ala. 1984)."
535 So.2d at 88. Evidently, the Tatum court determined that the language of the grant of the easement at issue in that case was ambiguous or uncertain because the easement was described as a "road right-of-way." In view of the fact that the property over which the easement ran was under water, having been flooded by the creation of Neeley Lake in St. Clair County, the term "road
right-of-way" was ambiguous or uncertain. That ambiguity or uncertainty authorized the court to interpret the extent of the easement according to the "intention of the parties" and the "situation of the land." The Tatum court decided that, because the parties to the original deed were aware, at the time the easement was given, that the property would be inundated by the construction of Neeley Lake, the easement "was also granted to provide [the owner of the dominant tenement] access to the lake after its construction." 535 So.2d at 88. Accordingly, the court held that "[s]ince access to the lake is a purpose that is still in existence, the easement is still in existence." Id.
The ambiguity or uncertainty inherent in the language of the grant of the easement at issue in Tatum, however, is not present in the instant case. We are, therefore, governed by the general rule that language reserving a "road right-of-way easement" does not specify the purpose for which the easement is reserved. See also Lawley v. Abbott, 642 So.2d 707 (Ala. 1994), where the supreme court stated:
 "Lawley argues that the easement was originally granted for a particular purpose, i.e., ingress to and egress from the landlocked Parcel One and that that purpose ceased to exist when the Hydes bought the second parcel, because the second parcel was abutted by two public roads. She points out that, generally, an easement given for a specific purpose terminates as soon as that purpose ceases to exist, is abandoned, or is rendered impossible to accomplish. Lawrence v. Pate, 594 So.2d 73 (Ala. 1992).
 "When the easement is one of express grant, however, this Court must determine the scope of the easement according to the written language of the deed. Tatum v. Green, 535 So.2d 87 (Ala. 1988). If this language is unambiguous, the Court may not consider parol evidence to determine to what extent the grantor intended to grant the easement. Tatum.
 "In this case, the 1968 deed from the Smiths unambiguously granted the Hydes an easement over the property now owned by Lawley, without condition or reference to a specific purpose; accordingly, the Hydes held, and could transfer, a property right that cannot be diminished merely because there now exists an alternative means of ingress and egress. Magna, Inc. v. Catranis, 512 So.2d 912 (Ala. 1987)."
642 So.2d at 708 (emphasis added). Compare Sasser v. SpartanFoods Sys., Inc., 452 So.2d at 477 (holding that, when the stated purpose of an easement was to provide a means of ingress and egress "`to and from Ann Street or to and from the proposed extension of Spruce Street,'" once the Spruce Street extension was completed, the easement ran only to Spruce Street and not to Ann Street).
Because the easements reserved in the deeds to Kenneth Zadnichek had no reference to a specific purpose, the appellees' property rights in the easements could not be diminished merely because there are now alternative means of accomplishing what, the Zadnicheks contend, was the original purpose for the easements. See *Page 708 Lawley v. Abbott, supra. See also McClendon v. Hollis,730 So.2d 229, 230 (Ala.Civ.App. 1998).
 B. Abandonment
At trial, Kenneth Zadnichek testified that after he bought Parcel B, he fenced in the tract, as he had done with Parcel A, cleaned it up, and began raising cattle and building catfish ponds on the area over which the easement ran. The Zadnicheks contend that they proved that the appellees abandoned the Parcel B easement by their nonuse of the easement, their acquiescence in his control of the easement, and their having secured alternative means of access to Highway 9 from their properties. The trial court's judgment made a finding that there had been no abandonment.
 "It is settled law . . . that mere non-use of an easement or right of way, however long continued, will not of itself effect an abandonment or forfeiture of the right. . . .
 "Nevertheless, the owner of an easement may terminate it by abandonment, and the essence of the inquiry is the owner's intention, and `lapse of time and nonuser are evidentiary of an intention to abandon, and, when considered with other evidence of such intention, may be entitled to great weight according to the circumstances.'"
Alabama Power Co. v. Daily, 31 Ala.App. 441, 443, 18 So.2d 142,143-44 (1944) (quoting Western Union Tel. Co. v. Louisville Nashville R.R., 206 Ala. 368, 370, 89 So. 518, 518 (1921)).
In Alabama Power Co. v. Daily, supra, Daily's predecessor in title conveyed to the power company in 1924 a right of way across his property for the construction and maintenance of electric transmission lines. The power company used the right of way until 1932, when it removed the poles, lines, and all transmission equipment from the property. From 1934 to 1942, the power company did not use the right of way at all and Daily pastured his cattle on the property. Then, in 1942, the power company, over Daily's objection, entered the property, cleared the right of way, and began to erect new transmission lines. Daily sued, claiming damages for trespass and arguing that the power company had abandoned its easement. The Alabama Supreme Court affirmed the trial court's submission of the abandonment issue to a jury, noting that it is "the universal rule that the question of abandonment ordinarily is an issue of fact for jury decision."31 Ala.App. at 443, 18 So.2d at 144.
While Alabama Power Co. v. Daily, supra, dealt with lapse of time and mere nonuse of an easement for 8 years, Western UnionTelegraph Co. v. Louisville Nashville Railroad Co., supra, dealt with nonuse for 40 years, coupled with other affirmative acts indicative of an intent to abandon an easement. In WesternUnion, the telegraph company's predecessor condemned a right of way in 1877 on the west side of railroad tracks owned by the Louisville and Nashville Railroad Company between Montgomery and the Alabama-Tennessee state line. However, neither Western Union nor its predecessor had ever taken possession of the right of way or constructed a telegraph line on the west side of the railroad. Then, in 1917, Western Union sought an injunction to put it in possession of the right of way that had been condemned 40 years earlier. The trial court denied the injunction, and the Alabama Supreme Court affirmed its judgment.
The supreme court held that Western Union's 40-year "period
of absolute inaction," 206 Ala. at 370, 89 So. at 519, coupled with Western Union's 1884 lease from the railroad of the exclusive right to maintain its lines along the railway and Western *Page 709 
Union's 1912 effort to condemn a right of way along the railway for telegraph purposes, amounted to the abandonment of its original 1877 right of way.
In the present case, the Zadnicheks argue that not only have all of the appellees failed to use the easement and acquiesced in the Zadnicheks' exclusive use, but they also have taken positive steps to obtain alternative means of ingress and egress to their properties from Highway 9. The evidence tends to support the Zadnicheks' argument. For example, Jimmie Fidler testified that he purchased from the Zadnicheks the shaded triangle in the northeast corner of Parcel C so that he could have clear passage along the Old Trail Road that runs from the section line through Parcel D, across the shaded triangle in Parcel C, through Parcel F to Bishop's Lane, and then out to Highway 9. Mark Glassford testified that he and his wife reached Highway 9 by traveling the right of way along the section line that is the northern boundary of Parcel E and the southern boundary of Parcels C and B, to Louise Whatley's driveway (for which Whatley had granted them an easement) that connects to the highway.
Although the evidence supports the Zadnicheks' argument that the appellees had taken affirmative steps to secure other access to Highway 9, it was for the trial court as the finder of fact to determine whether those actions constituted abandonment of the easement on Parcel B. The trial court was presented with Fidler's testimony that he and Kenneth Zadnichek had discussed the fact that, if any of Frances Bishop's children ever purchased Parcel F, the Zadnicheks would have to open the easements on Parcels A and B. Kenneth Zadnichek denied that such a conversation ever occurred, but the trial court was authorized, in determining whether the appellees intended to permanently abandon their easements across the Zadnicheks' property, to credit Fidler's testimony and to discredit Kenneth Zadnichek's testimony. As the supreme court pointed out in Alabama Power Co. v. Daily,31 Ala.App. at 443, 18 So.2d at 144, it is a "universal rule that the question of abandonment ordinarily is an issue of fact." We will not substitute our judgment for that of the trial court on the question of abandonment.
 III. The Parcel C Easement
At the close of all the evidence, the appellees moved for, and the trial court entered, a judgment as a matter of law ("JML") in favor of the appellees with respect to the easement running along the southern boundary of Parcel C.[4] We affirm that part of the judgment.
The evidence was undisputed that the southern boundary of Parcel C runs along the section line and that sometime after 1990 the Zadnicheks and their neighbor to the south, John Fugard, cross conveyed to each other 20-foot easements along that line, thereby creating a 40-foot easement at the section lines.[5] Kenneth Zadnichek testified that the purpose of the cross-conveyance was "so everyone would have a way into their property" and so no one would "have to ever cross [the Zadnicheks'] property." Kenneth Zadnichek further testified that "by creating the other *Page 710 
[cross-conveyed] easement [with John Fugard], that made [the existing 40-foot easement reserved in Zadnichek's deed to Parcel C] unnecessary." On cross-examination of Zadnichek, the following occurred:
 "Q. [By the attorney for the appellees]: With reference to Parcel C, if I'm understanding across the bottom of C, you're asking the Court to, in effect, cut the easement on your property in half from 40 feet to 20 feet; is that correct?
"A. [By Kenneth Zadnichek]: Yes.
 "Q. And your basis for wanting it to be cut 20 feet off of that easement is what?
 "A. Is that John Fugard gave 20 feet off of his property thus recreating the 40 foot easement that was originally there.
 "Q. So your position is, if they have got access by another easement you can have your easement destroyed or invalidated, is that your position?
 "A. . . . [M]y position is that by creating the other easement that made mine unnecessary.
 "Q. But do you acknowledge that [Parcel C] is subject to that 40-foot easement of record?
". . . .
 "A. My understanding of the deed was that there was a 40-foot right-of-way easement across there."
The Zadnicheks cite no authority in support of their argument that the trial court erred by entering a judgment on partial findings for the appellees with respect to the easement on Parcel C. We conclude that the cross-conveyed easement at the southern boundary of Parcel C did not destroy, invalidate or make "unnecessary" the appellees' property right in the easement they reserved by deed. See Lawley v. Abbott, 642 So.2d at 708 (holding that a property right "cannot be diminished merely because there now exists an alternative means of ingress and egress" to the property); Magna, Inc. v. Catranis,512 So.2d 912, 914 (Ala. 1987) (stating that "[o]ur respect for property rights will not permit us to diminish or reduce [the] rights [of the owner of the dominant tenement] simply because neither [that owner] nor its tenant needs all the property to which it has property rights. Certainly, our federal and state constitutions protect such rights and would prohibit judicial deprivation or diminution of such rights based solely upon a judicial determination of an owner's lack of need for such property. The implications of a contrary result would be frightening.").
 IV. Conclusion
Those portions of the trial court's judgment declining to terminate the easements on Parcel B and Parcel C are affirmed. That portion of the judgment concluding that the Zadnicheks did not adversely possess the easement on Parcel A is reversed, and the cause is remanded with instructions to render a judgment for the Zadnicheks with respect to Parcel A.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and THOMPSON, PITTMAN, and MURDOCK, JJ., concur. *Page 711 
 APPENDIX (not to scale)
[1] Meadow Breeze, L.L.C., is a limited liability company owned by Kenneth Zadnichek and Ann Zadnichek.
[2] Although the record is not clear on these matters, it appears that, at some point, Kenneth Zadnichek transferred some of his interests in Parcel A, Parcel B, and/or Parcel C to Meadow Breeze, L.L.C.
[3] Among other transactions, Kenneth Zadnichek at one point conveyed Parcel A to Meadow Breeze, L.L.C.
[4] "A motion for a `judgment as a matter of law' asserted in a bench trial is actually a motion for a judgment on partial findings by the trial court." City of Prattville v. Post,831 So.2d 622, 627 (Ala.Civ.App. 2002). See also Rule 52(c), Ala. R. Civ. P.
[5] The evidence established that Louise Whatley and John Fugard also cross-conveyed to each other 20-foot easements at the section line that is the boundary between their respective properties to the south of Parcel B. *Page 712