Rel: August 15, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2025

_____

### CL-2024-0528

_____

### Arturo Villarreal

### v.

### Nita Moss

### Appeal from Colbert Circuit Court
### (CV-21-900241)

EDWARDS, Judge.

In October 2021, Nita Moss filed a complaint in the Colbert Circuit Court ("the trial court") seeking declaratory and injunctive relief against Arturo Villarreal. Moss alleged that she held a 24-foot-wide easement for ingress and egress to her property over property owned by Villarreal, that Villarreal had placed a mobile home on a portion of the easement, and that Villarreal had begun construction of a building foundation on a

portion of the easement. She requested that the trial court declare that she held a valid easement over Villarreal's property and permanently enjoin "Villarreal from placing or constructing any personal property, structure or building, or planting vegetation on the easement, or performing any other activity that blocks Moss's access across the easement." Villarreal answered the complaint and later, with leave of court, amended that answer to plead several affirmative defenses, including laches, and to assert a counterclaim in which he alleged that he had adversely possessed the easement based on his having affixed a mobile home to a portion of the easement in August 2000, more than 10 years before Moss commenced her action. After having taken Moss's deposition, Villarreal, with leave of court, again amended his answer, this time to plead as an affirmative defense that the easement had been terminated by abandonment or nonuse.

After a trial held on May 14, 2024, the trial court entered a judgment on June 5, 2024, in favor of Moss, declaring that the easement was valid and permanently enjoining Villarreal "from placing or constructing any personal property, structure, or building, or placing vegetation on the easement, or blocking it in any way." The trial court

expressly rejected the affirmative defenses of laches and abandonment of the easement and also concluded that Villarreal had not established the elements of adverse possession. Moss filed a postjudgment motion requesting that the trial court amend the judgment to include the legal description of the boundaries of the easement; the trial court amended the judgment as requested.

Villarreal filed a notice of appeal to this court on July 2, 2024. On August 29, 2024, this court transferred Villarreal's appeal to our supreme court after determining that it was not within our appellate jurisdiction, see Ala. Code 1975, § 12-3-10. On April 18, 2025, our supreme court transferred Villarreal's appeal back to this court after that court concluded that, pursuant to Coprich v. Jones, 406 So. 3d 58 (Ala. 2024), this court was the appropriate appellate forum; the supreme court's transfer order also stated that, if this court were to determine that the amount in controversy exceeded the $50,000 monetary limit of this court's general civil appellate jurisdiction, this court must nonetheless hear the appeal pursuant to our supreme court's discretionary-transfer authority under subsection (6) of Ala. Code 1975, § 12-2-7. In compliance

with our supreme court's directives, see Ala. Code 1975, § 12-3-16, we proceed to consider Villarreal's appeal.

Villarreal argues on appeal that the easement was terminated because he adversely possessed the easement property. He further argues that Moss had abandoned the easement. Typically, our review of a judgment relating to easements, boundary-line disputes, and adverse possession is governed by the ore tenus rule. See Lilly v. Palmer, 495 So. 2d 522, 525-26 (Ala. 1986). However, in their briefs, both Villarreal and Moss state that, because the material facts in this case are undisputed, our review of the trial court's judgment is de novo. See Lilly, 495 So. 2d at 526 (stating that "[t]he [ore tenus] presumption, however, even in adverse possession cases, is inapplicable where the facts are undisputed and the issue is resolved simply by applying the relevant law to these undisputed facts"). In light of the fact that the issue of abandonment of the easement, which turns on the intent of the easement holder, is a question of fact, we are inclined to apply the ore tenus rule to our review. See Zadnichek v. Fidler, 894 So. 2d 702, 709 (Ala. Civ. App. 2004).

Moss testified that she had purchased a 74-acre parcel of land from Thomas Green in October 2001 and that her purchase had also included

a 24-foot-wide access easement across the parcel of property owned by Villarreal. Moss does not live on the property she purchased, which is undeveloped. The record contains the 1999 deed to Moss's predecessor in title, Green, and the 2001 deed from Green to Moss, both of which reference the easement. The record also contains a 2000 deed conveying to Villarreal the property adjoining Moss's property; that deed does not contain any reference to an easement on the property.

According to Moss, she had not been entirely certain where the easement was located on Villarreal's property until she secured a survey of the property in 2008. She explained that the 2008 survey indicated that Villarreal's mobile home was located on a portion of his property over which the easement runs. Moss testified that she had gone to Villarreal's house to discuss the matter with Villarreal, but, she said, he was not at home. She said that she had shown a copy of her deed and the 2008 survey to Villarreal's wife, who, in turn, showed Moss a copy of Villarreal's deed, which, as noted, did not disclose the existence of the easement. Moss said that she had told Villarreal's wife that they should probably consult an attorney.

Moss explained that she had noticed in 2021 that Villarreal appeared to be building a foundation of some sort out of cinder blocks and mortar. Once she observed the beginnings of a foundation, she said, she contacted a lawyer about how to enforce the easement. According to Moss, the idea that Villarreal might build a permanent building on the easement as opposed to the existing mobile home, which, she said, could be more easily moved or adjusted, had caused her concern.

Moss admitted that she had seldom used the easement and that she had only walked along the easement once or twice. According to Moss, she had not been terribly concerned about the encroachment caused by the mobile home because, she said, the mobile home could easily be moved. However, she could not recall whether the mobile home still had wheels attached to it or whether it was affixed to the real property. Moss also admitted that she had taken no other action concerning the easement after learning about Villarreal's encroachment in 2008 until she commenced this action in 2021. She testified that she had used a different easement to access the property five or six times a year to check on the property, stating, "[w]e have to" because "the … easement has a trailer and a foundation on it." Thus, Moss testified that she could not

6

use, and had not used, the subject easement because of the obstruction caused by the mobile home and, more recently, the cinder-block foundation.

Villarreal testified through an interpreter. He said that he owned the property on which the easement was situated, that he had placed the mobile home on his property in 2000, and that the mobile home remained in the same location on his property on which it had been originally placed.[1] Villarreal also testified that he had planted a peach tree on the property underlying the easement. According to Villarreal, Moss had spoken with his wife about the easement in 2008. However, he testified that he had not taken any action to move the mobile home at that time because, he said, he went by his deed, which did not reflect the existence of any easement. He further testified that, at the time he placed the mobile home on his property and at the time he began constructing the cinder-block foundation in 2020, he had not known that an easement existed or where it might be located because his deed did not refer to any easement. Although he admitted that moving the mobile home the eight

---

[1]Villarreal also explained that he had sold the mobile home in 2011 but that he had repurchased the mobile home from the purchaser in 2015; he said that, during the time that he had not owned the mobile home, the purchaser had paid him $100 per month in lot rent.

feet and three inches necessary to remove it from the easement would be possible, he said that he had not moved the mobile home after Moss had informed his wife about the easement in 2008; he indicated that he did not want the mobile home located too close to his house, which is located on his property in close proximity to the mobile home. Villarreal also admitted that he could remove the portion of the foundation that he had built on the easement if he "rent[ed] a machine."

Andrea Villarreal, Villarreal's daughter-in-law, testified that she and Villarreal's son were living in the mobile home at the time of the trial and that they had lived in the mobile home for almost 10 years. According to Andrea, her children played on the easement and the family had buried deceased pets within the area of the easement. She also said that she would grow a garden that would sometimes "go[] over toward[] where the easement is [located]."

In its judgment, the trial court stated that Villarreal had not established that Moss had abandoned the easement. Abandonment of an easement is not accomplished through mere nonuse. See McCulloch v. Roberts, 290 Ala. 303, 307, 276 So. 2d 425, 428 (1973).

> "'Mere nonuser of a right of way or other easement, acquired by grant or condemnation, however long-continued,

8

will not of itself work an abandonment and forfeiture of the right. Such nonuser must be accompanied by an intention to abandon, and this intention must be clearly deducible from the declarations or conduct of the claimant, or from the facts and circumstances incidental to his nonuser. (Citations omitted).'"

McCulloch, 290 Ala. at 307, 276 So. 2d at 428 (quoting Western Union Tel. Co. v. Louisville & Nashville R.R., 202 Ala. 542, 548-49, 81 So. 44, 50-51 (1919)). As this court observed in Zadnichek, 894 So. 2d at 709 (quoting Alabama Power Co. v. Daily, 31 Ala. App. 441, 443, 18 So. 2d 142, 144 (1944)), it is a "'universal rule that the question of abandonment ordinarily is an issue of fact.'" The fact that Moss did not use the easement and the fact that she used a more convenient way to access her property are not sufficient, as a matter of law, to establish that she intended to abandon the easement. The trial court was not convinced that Moss intended to abandon the easement, and we may not substitute our judgment for that of the trial court on this issue.

Regarding Villarreal's claim of extinguishment of the easement through adverse possession, the trial court specifically concluded that Villarreal had not established the elements of adverse possession. An express easement may be extinguished by the adverse possession of the easement by the owner of the servient tenement. See Roden v. Capehart,

9

195 Ala. 29, 33, 70 So. 756, 758 (1915) (recognizing that an easement in an alleyway "could have … been lost by an adverse holding for [the requisite] period"); Zadnichek, 894 So. 2d at 704-06; and Gonzales v. Naman, 678 So. 2d 1152, 1154-55 (Ala. Civ. App. 1996). Of course,

> "[t]he general rule in Alabama and elsewhere is 'that the [fee] owner of a servient estate may himself use the land upon which an easement has been dedicated so long as such right does not conflict with the purpose and character of the easement.' Duke v. Pine Crest Homes, Inc., 358 So. 2d 148, 150 (Ala. 1978) (emphasis added); see Carter v. Stringfellow, 293 Ala. 525, [529,] 306 So. 2d 273[, 276] (1975) ('The right to use the land on which an easement has been dedicated remains in the owner of the servient estate so long as such right does not conflict with the purpose and character of the easement'); and Collins v. Alabama Power Co., 214 Ala. 643, 108 So. 868 (1926)."

Blalock v. Conzelman, 751 So. 2d 2, 5-6 (Ala. 1999). Put another way, although the owner of the servient estate may use the land underlying an easement, he or she "must abstain from acts interfering with or inconsistent with the proper enjoyment of the easement by the owner of the dominant estate." Magna, Inc. v. Catranis, 512 So. 2d 912, 913 (Ala. 1987). Our supreme court has recognized that "there can be no doubt that [a] dwelling house, resting in part upon complainant's right of way, is an obstruction" of an easement. Collins v. Alabama Power Co., 214 Ala. 643, 645, 108 So. 868, 869 (1926) (describing a dwelling house built

10

such that it "extend[ed] 15 feet over and upon the right of way" at issue). However, even placement of a minimal obstruction in an easement by the servient owner is not justified if it "'clearly interferes with the enjoyment of the easement.'" Ex parte Folsom, 42 So. 3d 732, 739 (Ala. 2000) (quoting Brown v. Alabama Power Co., 275 Ala. 467, 471, 156 So. 2d 153, 157 (1963)).

It follows, then, that in order for the owner of a servient estate to establish the necessary "possession" to adversely possess an easement running over his or her own property, he or she must use the property underlying the easement in a manner that "'conflicts[s] with the purpose and character of the easement,'" Blalock, 751 So. 2d at 5 (quoting Duke v. Pine Crest Homes, Inc., 358 So. 2d 148, 150 (Ala. 1978)), or that "interfer[es] with or [is] inconsistent with the proper enjoyment of the easement by the owner of the dominant estate." Magna, 512 So. 2d at 913. In the trial court, Villarreal argued, and Moss conceded, that, to establish adverse possession of the easement, Villarreal was required to establish by clear and convincing evidence that, for a period of 10 years or more, he exercised over the property underlying the easement possession that was open, notorious, hostile, continuous, and exclusive.

11

See Ala. Code 1975, § 6-5-200; Brown v. Alabama Great S. R.R., 544 So. 2d 926, 931 (Ala. 1989); and Johnson v. Coshatt, 591 So. 2d 483, 484 (Ala. 1991). According to its judgment, the trial court agreed that Villarreal was required to establish that he had exercised open, notorious, hostile, continuous, and exclusive possession over the property underlying the easement for a 10-year period.

In its judgment, the trial court specifically concluded that Villarreal's possession of the easement property was not "exclusive" because, the trial court explained, Villarreal's mobile home obstructed only 8 feet of a 24-foot-wide easement and, therefore, did not prevent Moss from using the easement for its stated purpose of ingress and egress. In support of the trial court's conclusion, Moss argues in her responsive brief on appeal, as she did before the trial court, that Villarreal was required to establish exclusive use and to provide her "unequivocal indication that [he] was prohibiting [her] use of the easement." Moss's brief, p. 9. She contends in her brief that "[t]he fact that the mobile home did not prohibit her from using the easement and [that] it could be moved when required did not provide unequivocal

indication that Villarreal claimed the sole right to use the easement."

Moss's brief, p. 10.

Certainly, a claimant attempting to establish adverse possession

must produce clear and convincing evidence of exclusive possession.

> "'"Exclusive possession" means that claimant must hold possession of the land for himself, as his own, and not for another, or must maintain exclusive dominion over the property and appropriation of it to his own use and benefit. To establish exclusive possession, there must be an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and <u>the claimant's conduct must afford an unequivocal indication that he is exercising dominion of a sole owner</u>. Exclusiveness essential to adverse possession may or must be shown by acts which comport with ownership and would ordinarily be done by an owner for his own use to the exclusion of others, and all such acts must be considered collectively in determining the sufficiency of possession. Exclusiveness of possession is often evidenced by the erection of physical improvements on the property, such as fences, houses or other structures, and, in their absence, substantial activity on the land is required.'"

<u>Strickland v. Markos</u>, 566 So. 2d 229, 235 (Ala. 1990) (quoting 2 C.J.S.

<u>Adverse Possession</u> § 54 at 726-27) (emphasis added).

Although Moss herself testified that she had not used the easement

because the mobile home and the partially constructed cinder-block

foundation had obstructed the easement, the evidence does not establish

that Moss could not have used the easement for ingress or egress to her

13

property for the 10-year period preceding the action. Cf. Zadnichek, 894 So. 2d at 704 (explaining that the dominant-estate holders had not used their easement because the servient-estate holders had erected a fence across both ends of the easement, preventing them from accessing the easement in any way). That is, unlike the fencing constructed by the servient-estate holders in Zadnichek, Villarreal's mobile home, which encroached upon only a small portion of the easement, did not completely frustrate Moss's ability to use the easement for ingress and easement. Villarreal's mobile home, although clearly an encroachment, did not "'conflict with the purpose and character of the easement,'" Blalock, 751 So. 2d at 5 (quoting Duke, 358 So. 2d at 150), or "interfere[] with … the proper enjoyment of the easement by the owner of the dominant estate," Magna, 512 So. 2d at 913, to the extent that it prevented Moss's use of the easement for its stated purpose.

Based on the evidence contained in the record on appeal, we agree with the trial court that Villarreal failed to establish by clear and convincing evidence that he had adversely possessed the easement held by Moss such that it was extinguished. Although his mobile home sat upon a small portion of the easement for many years, Villarreal did not

14

show that he had exclusively possessed the easement such that Moss could not use the easement for its stated purpose. Accordingly, we affirm the judgment of the trial court.

AFFIRMED.

Moore, P.J., and Hanson, Fridy, and Bowden, JJ., concur.